PENNSYLVANIA AFL–CIO, by William GEORGE and Richard Bloomingdale, Trustees Ad Litem; and Pennsylvania Federation of Injured Workers, Inc.; and Philadelphia Area Project on Occupational Safety and Health, Petitioners,

v.

COMMONWEALTH of Pennsylvania; and Thomas J. Ridge, in his official capacity as Governor of the Commonwealth of Pennsylvania; and John J. Butler, in his official capacity as Secretary of Labor and Industry of the Commonwealth of Pennsylvania, Respondents.

Commonwealth Court of Pennsylvania.

Argued Dec. 11, 1996.

Decided April 1, 1997.

Irwin W. Aronson, Camp Hill, and Eric B. Schnurer, Harrisburg, for petitioners.

Gregory E. Dunlap, Deputy General Counsel, Harrisburg, for respondents.

Linda J. Shorey, Harrisburg, for intervenors, Senator Loeper, et al.

John H. Broujos, Carlisle, for intervenors, Albert Belan, et al.

Before COLINS, President Judge, and DOYLE, PELLEGRINI, FRIEDMAN, KELLEY, FLAHERTY and LEADBETTER, JJ.

KELLEY, Judge.

On July 19, 1996, the Pennsylvania AFL–CIO, Pennsylvania Federation of Injured Workers, Inc., and Philadelphia Area Project on Occupational Safety and Health (collectively, petitioners) filed a five-count petition for review in the nature of a complaint in equity (petition for review) addressed to this court's original jurisdiction. In the first four counts of the petition for review, petitioners allege that the General Assembly violated mandatory provisions of the Pennsylvania Constitution when it enacted Act 57 of 1996 (Act 57).[1] In the fifth count of the petition for review, petitioners allege that the Committee on Rules of the House of Representatives violated the Sunshine Act[2] when it conducted a meeting to consider Senate Bill No. 801, which ultimately became Act 57, at a time other than that announced by the Speaker of the House of Representatives.

Petitioners request a declaratory judgment that Act 57 was unconstitutionally or unlawfully enacted. They further request that the Commonwealth of Pennsylvania, Thomas J. Ridge, in his official capacity as Governor of the Commonwealth of Pennsylvania, and Johnny J. Butler, in his official capacity as Secretary of Labor and Industry of the Commonwealth of Pennsylvania (collectively, respondents) be permanently enjoined from implementing any of the provisions of Act 57[3] and that petitioners be granted reasonable counsel fees and costs.

On August 19, 1996, respondents filed preliminary objections to the petition for review. Respondents also requested that this court strike portions of the petition for review. On September 11, 1996, Senators F. Joseph Loeper, Gibson E. Armstrong and Noah W. Wenger (collectively, Loeper intervenors) also filed preliminary objections to the petition for review.[4] The preliminary objections

---

1. Amendments to the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1—1041.4, are the subject of Act 57.

2. Act of July 3, 1986, P.L. 388, *as amended,* 65 P.S. §§ 271—286.

3. On July 29, 1996, petitioners filed an application for a preliminary injunction, requesting that respondents be preliminarily enjoined from implementing or enforcing Act 57, pending a resolution of this case on the merits. A hearing was held before this court on September 5, 1996, at which no testimony was taken. By order dated September 16, 1996, the chancellor denied petitioners' application for a preliminary injunction.

*Pennsylvania AFL–CIO v. Commonwealth,* 683 A.2d 691 (Pa.Cmwlth.1996) (single judge opinion by Colins, P.J.).

4. On August 19, 1996, Senators F. Joseph Loeper, Gibson E. Armstrong and Noah W. Wenger filed a petition for leave to intervene in this case (Loeper petition). Senator Loeper is the Chairman of the Senate Committee on Rules and Executive Nominations. Senator Armstrong is the Chairman of the Senate Committee on Labor and Industry. Senator Wenger was the sponsor in the Senate Committee on Rules and Executive Nominations of the amendments to the Workers' Compensation Act which are the subject of Act 57. The Loeper intervenors support the views of

of respondents and the Loeper intervenors are now before this court for disposition.[5]

On September 13, 1996, Senators Albert V. Belan, Gerald J. LaValle, Richard A. Kasunic and Christine M. Tartaglione (collectively, Belan intervenors) filed a four-count petition for review in the nature of a complaint in equity (Belan petition for review) addressed to this court's original jurisdiction.[6] Like petitioners, the Belan intervenors allege in their petition for review that the General Assembly violated mandatory provisions of the Pennsylvania Constitution when it enacted Act 57. The Belan intervenors request the same relief as petitioners.

On September 26, 1996, respondents filed preliminary objections to the Belan petition for review. Respondents also requested that this court strike portions of the Belan petition for review. On October 15, 1996, the Loeper intervenors filed preliminary objections to the Belan petition for review. The preliminary objections of respondents and the Loeper intervenors to the Belan petition for review are also now before this court for disposition.

The parties in this case have not stipulated to facts relating to the enactment of Act 57. However, this court can take judicial notice

of the Legislative Journals, as well as the various versions of Senate Bill No. 801, the bill ultimately enacted as Act 57. For purposes of ruling on the preliminary objections which are now before us, we shall adopt the facts as set forth by this court in its opinion on petitioners' application for a preliminary injunction. *See Pennsylvania AFL–CIO v. Commonwealth,* 683 A.2d at 692–94.

## I. FACTS

1. On March 21, 1995, Senate Bill No. 801, Printer's No. 850, was introduced in the Pennsylvania Senate and referred to the Senate Committee on Labor and Industry. The original bill was entitled as follows:

AN ACT Amending the act of June 2, 1915 (P.L. 762, No. 340), entitled "An act providing for the creation and administration of a State Fund for the insurance of compensation for injuries to employes of subscribers thereto; declaring false oaths by the subscribers to be misdemeanors; and providing penalties for the violation thereof," broadening the State Workmen's Insurance Fund's permissible coverages.

2. On January 31, 1996, the Senate Committee on Labor and Industry reported an amended version of Senate Bill No. 801 to

---

the named respondents, arguing in favor of the validity of Act 57.

Following a hearing, this court, by opinion and order dated September 5, 1996, granted the Loeper petition. The Loeper intervenors were granted leave to file preliminary objections to the petition for review. *See Pennsylvania AFL–CIO by George v. Commonwealth,* 683 A.2d 691 (Pa. Cmwlth.1996).

5. On September 9, 1996, a brief of amici curiae in opposition to petitioners' application for a preliminary injunction was filed by the Pennsylvania Chamber of Business and Industry and the National Federation of Independent Business. These two entities rely upon their September 9, 1996 brief, in lieu of filing a separate brief, to support the preliminary objections of the Loeper intervenors.

On November 25, 1996, a brief of amici curiae in opposition to the preliminary objections of respondents and the Loeper intervenors was filed by Local 22, International Association of Firefighters; Philadelphia Federation of Teachers, American Federation of Teachers, Local 3, AFL–CIO; and District Council 47, American Federation of State, County and Municipal Employees, AFL–CIO.

6. On August 19, 1996, Senators Albert V. Belan, Gerald J. LaValle, Richard A. Kasunic and Christine M. Tartaglione filed an application for leave to intervene in this case (Belan petition). Senator Belan is the Minority Chairman of the Senate Committee on Labor and Industry. Senators LaValle, Kasunic and Tartaglione are Democratic members of the Senate Committee on Labor and Industry. The Belan intervenors support the views of the named petitioners, arguing that Act 57 is invalid.

Following a hearing, this court, by opinion and order dated September 5, 1996, granted the Belan petition. The Belan intervenors were granted leave to file a petition for review in this case. We note that this court's September 5, 1996 opinion stated that, while the other parties in this case were seeking to invalidate Act 57, only the Belan intervenors had standing to assert that the procedures used to enact Act 57 had resulted in an interference with their legal rights and duties to act as legislators. *See Pennsylvania AFL–CIO by George v. Commonwealth,* 683 A.2d 691 (Pa. Cmwlth. 1996).

the full Senate, now bearing Printer's No. 1697. The amendments made by the Senate Committee on Labor and Industry related solely to the subject of what is commonly known as the State Workmen's Insurance Fund Law,[7] and the title was unchanged.

3. Following two considerations by the full Senate, Senate Bill No. 801, Printer's No. 1697, was referred to the Senate Committee on Appropriations on February 5, 1996.

4. The Senate Committee on Appropriations further amended Senate Bill No. 801, and reported the bill, now bearing Printer's No. 1748, to the full Senate on February 7, 1996. The amendments made by the Senate Appropriations Committee related solely to the subject of the State Workmen's Insurance Fund Law and changed the title of the bill by adding to the original title "and providing for an investigation of the financial integrity and stability of the fund."

5. On February 12, 1996, the full Senate passed Senate Bill No. 801, Printer's No. 1748, by a vote of 48–0.

6. On February 16, 1996, Senate Bill No. 801, Printer's No. 1748, was referred to the Committee on Labor Relations of the House of Representatives.

7. On March 12, 1996, the House Committee on Labor Relations further amended Senate Bill No. 801 and reported the bill to the full House of Representatives as Printer's No. 1815. These amendments again were limited to the subject of the State Workmen's Insurance Fund Law. The word "and" was stricken from the language added by the Senate to the bill's original title, and the words "and making a repeal" were added to the amended title.

8. On May 1, 1996, Senate Bill No. 801, Printer's No. 1815, was passed by the full House of Representatives by a vote of 197–0.

9. Following passage by the House of Representatives, Senate Bill No. 801 was returned to the Senate for concurrence in the House amendments and was referred to the Senate Committee on Rules and Executive Nominations on May 6, 1996.

10. On June 11, 1996, Senate Bill No. 801, now bearing Printer's No. 2102, was amended by the Senate Committee on Rules and Executive Nominations. These amendments included substantial changes to the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1—1041.4. The title of Senate Bill No. 801 was also amended and was now stated as the following:

AN ACT Amending the Act of June 2, 1915 (P.L. 736, No. 338), entitled, as reenacted and amended, "An Act defining the liability of an employer to pay damages for injuries received by an employe in the course of employment; establishing an elective schedule of compensation; providing procedure for the determination of liability and compensation thereunder; and prescribing penalties," further providing definitions, for recovery, for liability for compensation, for financial responsibility, for compensation schedules and for wages; providing for reporting; further providing for notices, for examinations, for commutation of compensation, for exclusions, for the Workmen's Compensation Appeal Board and for procedure; providing for informal conferences; further providing for processing claims, for commutation petitions, for modifications and reversals, for pleadings, for investigations, for evidence, for appeals, for costs and attorney fees, for the Pennsylvania Workers' Compensation Advisory Council and for insurance policies; providing for settlements and for collective bargaining; further providing for ratings organizations, for rating procedures and for shared liability; providing for employer association groups; further providing for safety committees, for penalties, for prosecutions and for collection of penalties; providing for limitation of actions; further providing for assessments; providing for Workers' Compensation Judges and for transfer of administrative functions; transferring provisions relating to the State Workmen's Insurance Fund; and making a repeal.

11. On June 12, 1996, Senate Bill No. 801, Printer's No. 2102, was referred to the Senate Committee on Labor and Industry, which

7. Act of June 2, 1915, P.L. 762, *as amended,* 77 P.S. §§ 201—395.

reported the bill without further amendment on June 17, 1996.

12. On June 17, 1996, Senate Bill No. 801 was referred to the Senate Committee on Rules and Executive Nominations, which further amended the bill and reported the bill to the full Senate as Printer's No. 2154. These amendments retained the new title of the bill.[8]

13. On June 19, 1996, Senate Bill No. 801 was passed by the Senate by a vote of 27–22.

14. On June 19, 1996, Senate Bill No. 801 was returned to the House of Representatives and referred to the House Committee on Rules. Following a meeting of that Committee, the bill was reported to the full House of Representatives as committed.

15. The House of Representatives passed Senate Bill No. 801, Printer's No. 2154, by a vote of 106–97.

16. Senate Bill No. 801, Printer's No. 2154, was signed in both the Senate and the House of Representatives on June 20, 1996.

17. Governor Ridge signed the bill into law on June 24, 1996.

We shall first discuss the petitions for review filed by petitioners and the Belan intervenors. We shall then discuss the preliminary objections to the petitions for review filed by respondents and the Loeper intervenors.

## II. PETITIONS FOR REVIEW

On July 19, 1996, petitioners filed with this court their five-count petition for review which is addressed to this court's original jurisdiction. In Count I of the petition for review, petitioners allege that the Senate Committee on Rules and Executive Nominations and the Senate as a whole violated Article III, Section 5 of the Pennsylvania Constitution [9] by purporting to amend Senate Bill No. 801 after its passage by the Senate and in a manner beyond the scope of amendments to Senate Bill No. 801 proposed and adopted by the House of Representatives. In Count II of the petition for review, petitioners allege that the Senate Committee on Rules and Executive Nominations, the Senate as a whole, the House Committee on Rules, and the House of Representatives as a whole violated Article II, Section 1 and Article III, Section 4 of the Pennsylvania Constitution [10] by prohibiting the Senate and the House of Representatives, as a whole, from voting on the proposed amendments to Senate Bill No. 801, inserted by the Senate Committee on Rules and Executive Nominations, without also per se rejecting Senate Bill No. 801 as already constitutionally adopted by the Senate and the House of Representatives. In Count III of the petition for review, petitioners allege that the General Assembly violated Article III, Sec-

8. Although the Senate Committee on Rules and Executive Nominations did not purport to amend the title of the bill, we note that the title of Printer's No. 2154 appears to have added the words "for regulations" at page 1, line 25 and the words "and broadening its permissible coverages" at page 2, lines 5 and 6. These changes were retained in the final version of the bill.

9. Article III, Section 5 of the Pennsylvania Constitution provides as follows:

No amendment to bills by one House shall be concurred in by the other, except by the vote of a majority of the members elected thereto, taken by yeas and nays, and the names of those voting for and against recorded upon the journal thereof; and reports of committees of conference shall be adopted in either House only by the vote of a majority of the members elected thereto, taken by yeas and nays, and the names of those voting recorded upon the journals.

10. Article II, Section 1 of the Pennsylvania Constitution provides as follows:

The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives.

Article III, Section 4 of the Pennsylvania Constitution provides as follows:

Every bill shall be considered on three different days in each House. All amendments made thereto shall be printed for the use of the members before the final vote is taken on the bill and before the final vote is taken, upon written request addressed to the presiding officer of either House by at least twenty-five per cent of the members elected to that House, any bill shall be read at length in that House. No bill shall become a law, unless on its final passage the vote is taken by yeas and nays, the names of the persons voting for and against it are entered on the journal, and a majority of the members elected to each House is recorded thereon as voting in its favor.

tions 1, 2, 3 and 4 of the Pennsylvania Constitution [11] by failing to clearly express the purpose of Senate Bill No. 801 in its title, by so amending Senate Bill No. 801 on its passage through the General Assembly as to change its original purpose, and by failing to refer Senate Bill No. 801 to committee or to consider it on three separate days in either the Senate or the House of Representatives after its original purpose had been changed. In Count IV of the petition for review, petitioners allege that the Senate Committee on Rules and Executive Nominations and the Senate as a whole violated Article III, Section 4 of the Pennsylvania Constitution by purporting to amend Senate Bill No. 801 after its passage by the Senate as a whole. In Count V of the petition for review, petitioners allege that the House Committee on Rules violated the Sunshine Act by conducting a meeting to consider Senate Bill No. 801 at a time other than and prior to the time announced by the Speaker of the House of Representatives.

Petitioners request a declaratory judgment that Act 57 was unconstitutionally or unlawfully enacted. They further request that respondents Governor Ridge and Secretary Butler be permanently enjoined from implementing any of the provisions of Act 57 and that petitioners be granted reasonable counsel fees and costs.

On September 13, 1996, the Belan intervenors filed with this court their four-count petition for review which is also addressed to this court's original jurisdiction. Counts I–IV of the Belan petition for review allege the same constitutional violations as have been set forth in Counts I–IV of petitioners' petition for review. The Belan intervenors request a declaratory judgment that Act 57 was unconstitutionally enacted. They further request that respondents Governor Ridge and Secretary Butler be permanently enjoined from implementing any of the provisions of Act 57 and that the Belan intervenors be granted reasonable counsel fees and costs.

## III. PRELIMINARY OBJECTIONS OF RESPONDENTS AND LOEPER INTERVENORS

On August 19, 1996, respondents filed with this court preliminary objections in the nature of a demurrer to the petition for review. They assert that the petition for review fails to set forth facts constituting a cause of action for which relief may be granted. In particular, respondents assert that:

● Count I fails to state a violation of Article III, Section 5 of the Pennsylvania Constitution where it is averred that the majority of the members of the Senate and the House of Representatives voted to approve Senate Bill No. 801, Printer's No. 2154;

● Count II fails to state violations of Article II, Section 1 and Article III, Section 4 of the Pennsylvania Constitution where it is averred that Senate Bill No. 801, Printer's No. 2154, was voted upon and passed by both the Senate and the House of Representatives;

● Count III fails to state violations of Article III, Sections 1, 2, 3 and 4 of the Pennsylvania Constitution where Senate Bill No. 801 concerns the general subject of workers' compensation, where this subject was clearly stated in its title, where the final form of Senate Bill No. 801 was presented to both the Senate and the House of Representatives for their consideration and adoption, and where the amendments to the original form of Senate Bill No. 801 were germane to, and did not wholly change, the subject of the bill;

---

11. Article III, Section 1 of the Pennsylvania Constitution provides as follows:

> No law shall be passed except by bill, and no bill shall be so altered or amended, on its passage through either House, as to change its original purpose.
> Article III, Section 2 of the Pennsylvania Constitution provides as follows:

> No bill shall be considered unless referred to a committee, printed for the use of the members and returned therefrom.
> Article III, Section 3 of the Pennsylvania Constitution provides as follows:
> No bill shall be passed containing more than one subject, which shall be clearly expressed in its title, except a general appropriation bill or a bill codifying or compiling the law or a part thereof.

● Count IV fails to state a violation of Article III, Section 4 of the Pennsylvania Constitution where it is averred that the final form of Senate Bill No. 801 was voted upon and passed by both the Senate and the House of Representatives and where the amendments to the original form of Senate Bill No. 801 were germane to, and did not wholly change, the subject of the bill;

● Count V, alleging a violation of the Sunshine Act, is barred by the Enrolled Bill Doctrine and/or the Speech and Debate Clause embodied in Article II, Section 15 of the Pennsylvania Constitution;

● Count V, in the alternative, is moot based upon the passage of the final form of Senate Bill No. 801 by the House of Representatives; and

● Acts of the General Assembly are entitled to presumptions of constitutionality and regularity.

Respondents have asked this court to dismiss petitioners' petition for review on the basis of their preliminary objections. In addition, respondents have asked this court to strike portions of petitioners' petition for review.

Respondents also filed with this court preliminary objections in the nature of a demurrer to the Belan petition for review. Respondents have asserted the same preliminary objections with respect to the Belan petition for review as they raised with respect to petitioners' petition for review. Respondents have asked this court to dismiss the Belan petition for review on the basis of their preliminary objections. In addition, respondents have asked this court to strike portions of the Belan petition for review.

On September 11, 1996, the Loeper intervenors filed preliminary objections in the nature of a demurrer to petitioners' petition for review. They assert that the petition for review fails to state a claim for which relief may be granted. The Loeper intervenors also assert that all of the claims in petitioners' petition for review are non-justiciable pursuant to the Enrolled Bill Doctrine, the Separation of Powers Doctrine, the Political Question Doctrine and the Speech and Debate Clause of the Pennsylvania Constitution.

The Loeper intervenors have asked this court to dismiss petitioners' petition for review on the basis of their preliminary objections.

The Loeper intervenors also filed preliminary objections in the nature of a demurrer to the Belan petition for review. The Loeper intervenors have asserted the same preliminary objections with respect to the Belan petition for review as they raised with respect to petitioners' petition for review. The Loeper intervenors have asked this court to dismiss the Belan petition for review on the basis of their preliminary objections.

■ Preliminary objections, the end result of which would be dismissal of a cause of action, should be sustained only in cases that are clear and free from doubt. *Bower v. Bower,* 531 Pa. 54, 611 A.2d 181 (1992). The test is whether it is clear from all of the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish his or her right to relief. *Firing v. Kephart,* 466 Pa. 560, 353 A.2d 833 (1976). In ruling on preliminary objections, all well-pleaded facts in the petition for review and all inferences reasonably deducible therefrom must be accepted as true. *Pennsylvania Dental Hygienists' Association v. State Board of Dentistry,* 672 A.2d 414 (Pa.Cmwlth.1996).

Initially, respondents and the Loeper intervenors assert that judicial inquiry into the claims of petitioners and the Belan intervenors is barred by the Enrolled Bill Doctrine, the Political Question Doctrine and the Speech and Debate Clause of the Pennsylvania Constitution. In light of the fact that we need not reach the constitutional claims of petitioners and the Belan intervenors if any of these three provisions is applicable in the present case, we shall begin by considering the Enrolled Bill Doctrine, the Political Question Doctrine and the Speech and Debate Clause of the Pennsylvania Constitution.

### A. ENROLLED BILL DOCTRINE

■ We initially point out that acts of the General Assembly enjoy a strong presumption of constitutionality, and the party challenging an act has a heavy burden of

persuasion. 1 Pa.C.S. § 1922(3); *Pennsylvania Liquor Control Board v. Spa Athletic Club*, 506 Pa. 364, 370, 485 A.2d 732, 735 (1984). Legislation will not be invalidated unless it clearly, palpably and plainly violates the Pennsylvania Constitution, and any doubts are to be resolved in favor of a finding of constitutionality. *Pennsylvania Liquor Control Board*, 506 Pa. at 370, 485 A.2d at 735.

To preserve the delicate balance which is critical to the proper functioning of a tripartite system of government, our Supreme Court has exercised judicial restraint to avoid an intrusion upon the prerogatives of a sister branch of government. *Consumer Party of Pennsylvania v. Commonwealth*, 510 Pa. 158, 176–77, 507 A.2d 323, 332 (1986). Pursuant to this principle, our Supreme Court has rejected challenges to the procedural regularity of the passage of legislation on the grounds that the matter is non-justiciable under the Enrolled Bill Doctrine.[12] *Id.* at 177, 507 A.2d at 332. As explained in *Kilgore v. Magee*, 85 Pa. 401, 412 (1877), the Enrolled Bill Doctrine provides that:

> [W]hen a law has been passed and approved and certified in due form, it is no part of the duty of the judiciary to go behind the law as duly certified to inquire into the observance of form in its passage.... The presumption in favor of regularity is essential to the peace and order of the state.

While the Enrolled Bill Doctrine operates as an appropriate means of judicial restraint to avoid intrusion by the judiciary into the prerogatives of a co-equal branch of government, the legitimacy of such abstention is dependent upon the situation presented. *Common Cause of Pennsylvania v. Commonwealth*, 668 A.2d 190, 195 (Pa. Cmwlth.1995), *aff'd per curiam*, 544 Pa. 512, 677 A.2d 1206 (1996); *Consumer Party*, 510 Pa. at 177, 507 A.2d at 333. The countervailing concern is the judiciary's mandate to

insure that government functions within the bounds of constitutional prescription. *Consumer Party*, 510 Pa. at 177, 507 A.2d at 333. The judiciary may not abdicate this responsibility under the guise of its deference to a co-equal branch of government. *Id.* at 177–78, 507 A.2d at 333.

Our Supreme Court has stated that "[w]hile it is appropriate to give due deference to a co-equal branch of government as long as it is functioning within constitutional constraints, it would be a serious dereliction on our part to deliberately ignore a clear constitutional violation." *Id.* at 178, 507 A.2d at 333; *Common Cause*, 668 A.2d at 195. In considering whether the enactment of the Public Official Compensation Law (Compensation Law)[13] violated Article III of the Pennsylvania Constitution, our Supreme Court further stated in *Consumer Party* as follows:

> We agree with the Attorney General that we must not inquire into every allegation of procedural impropriety in the passage of legislation. However, where the facts are agreed upon and the question presented is whether or not a violation of a mandatory constitutional provision has occurred, it is not only appropriate to provide judicial intervention, and if warranted a judicial remedy, we are mandated to do no less.

510 Pa. at 180, 507 A.2d at 334. In *Consumer Party*, our Supreme Court determined that judicial scrutiny of the enactment of the Compensation Law was warranted.

For purposes of ruling on the preliminary objections of respondents and the Loeper intervenors, this court must take as true all well-pleaded facts and inferences deducible therefrom. *Dintzis v. Hayden*, 146 Pa. Cmwlth. 618, 606 A.2d 660 (1992). In the present case, petitioners and the Belan intervenors have not alleged in their petitions for

---

12. An enrolled bill is a bill which has been certified by the Speaker of the House and the presiding officer of the Senate as having passed the General Assembly, which has been signed by the Governor, and which has been filed with the Secretary of the Commonwealth. *See Parker v. Com., Department of Labor and Industry*, 115 Pa.Cmwlth. 93, 118–20, 540 A.2d 313, 327

(1988), *aff'd per curiam*, 521 Pa. 531, 557 A.2d 1061 (1989); Robert E. Woodside, Pennsylvania Constitutional Law 348 (1985).

13. Act of September 30, 1983, P.L. 160, *as amended*, 65 P.S. §§ 366.1—366.5b.

review a mere violation of an internal rule of the General Assembly which is not mandated by the Pennsylvania Constitution. *See Dintzis.* Rather, in Counts I–IV of their petitions for review, petitioners and the Belan intervenors have alleged that the legislative process by which Act 57 was enacted violated Article II, Section 1 and Article III, Sections 1–5 of the Pennsylvania Constitution. Accordingly, in the present case, the Enrolled Bill Doctrine does not bar this court's analysis of the procedure used by the General Assembly in the passage of Act 57 to determine whether such procedure complied with the mandates of the Pennsylvania Constitution.

■ While we have concluded that the Enrolled Bill Doctrine does not prevent this court from reviewing the constitutional claims raised by petitioners and the Belan intervenors, the same is not true with respect to petitioners' allegation of a Sunshine Act violation. In Count V of their petition for review, petitioners allege that the Committee on Rules of the House of Representatives violated the Sunshine Act when it conducted a meeting to consider Senate Bill No. 801 five minutes earlier than the time announced by the Speaker of the House.[14]

■ As we have stated, our Supreme Court has concluded that judicial intervention in the legislative process is warranted where the facts are agreed upon and the question presented is whether or not a violation of a mandatory constitutional provision has occurred. *Consumer Party,* 510 Pa. at

180, 507 A.2d at 334. Where the question presented does not concern an alleged violation of a mandatory constitutional provision, the matter is non-justiciable under the Enrolled Bill Doctrine. *Id.* at 177, 507 A.2d at 332. Our Supreme Court has exercised judicial restraint to avoid an intrusion upon the prerogatives of a co-equal branch of government where a clear constitutional violation has not been alleged. *Consumer Party; Common Cause.*

In the present case, petitioners' allegation that the House Committee on Rules violated the Sunshine Act is an alleged statutory violation, not a "clear constitutional violation" of the type contemplated in *Consumer Party* and *Common Cause.* We point out that Senate Bill No. 801 was passed by both the Senate and the House of Representatives and was signed into law by Governor Ridge on June 24, 1996. Accordingly, we conclude that the Enrolled Bill Doctrine does preclude this court from considering whether the House Committee on Rules violated the Sunshine Act.[15]

## B. POLITICAL QUESTION DOCTRINE

Similarly, in order to preserve the balance which is critical to the proper functioning of a tripartite system of government, judicial restraint has also been exercised pursuant to the Political Question Doctrine. The Political Question Doctrine is generally considered to derive from the principle of separation of powers. *Sweeney v. Tucker,* 473 Pa. 493, 375 A.2d 698 (1977). Pursuant to the Political

---

**14.** We note that petitioners have not presented any argument with respect to this issue in their brief to this court.

**15.** We note with interest that in *Consumers Education and Protective Association v. Nolan,* 470 Pa. 372, 368 A.2d 675 (1977), our Supreme Court considered whether the action of the Senate Committee on Rules and Executive Nominations in referring to the full Senate a gubernatorial nomination to the Public Utility Commission was covered by the Sunshine Act. Following an extensive review of the Sunshine Act, our Supreme Court concluded that it did not apply to executive nominations. *Consumers Education and Protective Association,* 470 Pa. at 388, 368 A.2d at 684. Nonetheless, our Supreme Court noted the following:

[E]ven were we to agree that the meeting in question was subject to the Sunshine Law so

as to invalidate the committee vote there taken, appellants provide no authority for a judicial holding that the subsequent confirmation vote, taken by the Senate as a whole as provided by the Constitution, was similarly invalid. To the contrary, cf. *Mikell v. Philadelphia School District,* 359 Pa. 113, 58 A.2d 339 (1948); *Kilgore v. Magee,* 85 Pa. 401 (1877).

*Id.* at 390–91, 368 A.2d at 685. Our Supreme Court further noted that Section 681(1) of Mason's Legislative Manual states that "[n]either the right of a committee to consider and report a bill, nor the validity of any action reported by a committee may be questioned after the house has begun its consideration of the bill or other matter reported." *Id.* at 391 n. 11, 368 A.2d at 685 n. 11.

Question Doctrine, the courts will not review the actions of another branch of government where the Constitution entrusts those actions to that other branch. *Id.* In *Baker v. Carr,* 369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663 (1962), the seminal case in this area, the United States Supreme Court discussed the standards for evaluating whether a political question exists:

It is apparent that several formulations which vary slightly according to the settings in which the questions arise may describe a political question.... Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

■ The Pennsylvania Constitution commits certain matters involving each house of the General Assembly to that house. Article II, Section 1 of the Pennsylvania Constitution grants legislative power to the General Assembly, which shall consist of a Senate and a House of Representatives. Pa. Const. art. II, § 1. Article II, Section 11 of the Pennsylvania Constitution states that "[e]ach House shall have power to determine the rules of its proceedings." Pa. Const. art. II, § 11. These sections of the Pennsylvania Constitution provide the basis for the contention by respondents and the Loeper intervenors that the constitutional violations alleged by petitioners and the Belan intervenors in their petitions for review present non-justiciable political questions.

■ Without doubt, the General Assembly has exclusive power over its internal affairs and proceedings. However, this power does not give the General Assembly the right to usurp the judiciary's function as ultimate interpreter of the Constitution. *Baker,* 369 U.S. at 211, 82 S.Ct. at 706–07; *Zemprelli v. Daniels,* 496 Pa. 247, 255, 436 A.2d 1165, 1169 (1981). *See also Jubelirer v. Singel,* 162 Pa.Cmwlth. 55, 638 A.2d 352 (1994). In fact, it is the duty of the courts to invalidate legislative action which is repugnant to the Constitution. *Zemprelli,* 496 Pa. at 256, 436 A.2d at 1169.

In the present case, petitioners and the Belan intervenors have alleged numerous constitutional violations in the legislative process by which the General Assembly enacted Act 57. As we have previously stated, we will not abdicate our responsibility to insure that government functions within the bounds of constitutional prescription under the guise of deference to a co-equal branch of government. Accordingly, the allegations of petitioners and the Belan intervenors require us to exercise our role as interpreter of the Pennsylvania Constitution and determine whether the procedure used by the General Assembly in the passage of Act 57 complied with its mandates.

### C. SPEECH AND DEBATE CLAUSE

■ Respondents and the Loeper intervenors have also asserted that the Speech and Debate Clause of the Pennsylvania Constitution [16] precludes judicial inquiry into the constitutional violations alleged by petitioners and the Belan intervenors in their petitions for review. We disagree with this assertion.

■ The Speech and Debate Clause of the Pennsylvania Constitution provides as follows:

The members of the General Assembly shall in all cases, except treason, felony, violation of their oath of office, and breach or surety of the peace, be privileged from arrest during their attendance at the sessions of their respective Houses and in going to and returning from the same; and

16. Pa. Const. art. II, § 15.

for any speech or debate in either House they shall not be questioned in any other place.

Pa. Const. art. II, § 15. Our Supreme Court has observed that the text of the Speech and Debate Clause of the Pennsylvania Constitution is essentially the same as its counterpart in the federal Constitution, U.S. Const. art. I, § 6. *Consumers Education and Protective Association v. Nolan*, 470 Pa. 372, 382, 368 A.2d 675, 680 (1977). The legislative immunity created by the Speech and Debate Clause "insures that legislators are free to represent the interests of their constituents without fear that they will be later called to task in the courts for that representation." *Powell v. McCormack*, 395 U.S. 486, 503, 89 S.Ct. 1944, 1954, 23 L.Ed.2d 491 (1969). As such, the Speech and Debate Clause has been read broadly in order to effectuate its purposes. *Sweeney v. Tucker*, 473 Pa. at 505, 375 A.2d at 703. The Speech and Debate Clause prohibits inquiry into those things generally said or done in the House or Senate in the performance of official duties and into the motivation for those acts. *Powell*, 395 U.S. at 502–03, 89 S.Ct. at 1953–55.

In evaluating the assertion by respondents and the Loeper intervenors that the Speech and Debate Clause of the Pennsylvania Constitution precludes judicial inquiry into the claims of petitioners and the Belan intervenors, we are mindful of the principle enunciated by the Supreme Court that "[l]egislative immunity [created by the Speech and Debate Clause] does not, of course, bar all judicial review of legislative acts." *Powell*, 395 U.S. at 503, 89 S.Ct. at 1954, citing *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803). As the Supreme Court stated in *Powell*:

> The purpose of the protection afforded legislators is not to forestall judicial review of legislative action but to insure that legislators are not distracted or hindered in the performance of their legislative tasks by being called into court to defend their actions.

395 U.S. at 505, 89 S.Ct. at 1955. *See also Sweeney*, 473 Pa. at 506, 375 A.2d at 703–04.

 Clearly, the very core of the Speech and Debate Clause is the protection of "the

integrity of the legislative process by insuring the independence of individual legislators." *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 502, 95 S.Ct. 1813, 1821, 44 L.Ed.2d 324 (1975), quoting *United States v. Brewster*, 408 U.S. 501, 507, 92 S.Ct. 2531, 2535, 33 L.Ed.2d 507 (1972). However, in the present case, petitioners and the Belan intervenors are seeking judicial review of legislative action as described in *Powell*. They have alleged that the General Assembly, as a whole, violated mandatory provisions of the Pennsylvania Constitution when it enacted Act 57. Based upon the pleadings in this case, we are not persuaded that judicial review of the legislative action taken by the General Assembly in this case is inappropriate. Accordingly, we conclude that the claims by petitioners and the Belan intervenors are not barred by the Speech and Debate Clause of the Pennsylvania Constitution.

Having concluded that the claims of petitioners and the Belan intervenors are not barred by the Enrolled Bill Doctrine, the Political Question Doctrine or the Speech and Debate Clause of the Pennsylvania Constitution, we shall proceed to analyze the procedure used by the General Assembly in the passage of Senate Bill No. 801 to determine whether it complies with the mandates of Article II, Section 1 and Article III, Sections 1–5 of the Pennsylvania Constitution. We shall begin our analysis by considering the mandates of Article III, Sections 1 and 3.

## D. ARTICLE III, SECTIONS 1 AND 3 OF THE PENNSYLVANIA CONSTITUTION

 We initially note that Article III of the Pennsylvania Constitution was adopted to correct the evil of unwise, improvident and corrupt legislation which had become rampant at the time of its passage. *Consumer Party*, 510 Pa. at 178, 507 A.2d at 333. Article III, Section 1 of the Pennsylvania Constitution provides that no bill shall be so altered on its passage through either house as to change its original purpose. Pa. Const. art. III, § 1. Petitioners and the Belan intervenors have alleged that the General Assembly violated this constitutional provision by so amending Senate Bill No. 801 on its passage

through the General Assembly as to change its original purpose. We disagree.

In discussing Article III, Section 1 of the Pennsylvania Constitution, our Supreme Court has stated that "[t]he purpose of the constitutional requirements relating to the enactment of laws was to put the members of the Assembly and others interested on notice ... so they might vote on it with circumspection." *Consumer Party*, 510 Pa. at 179–80, 507 A.2d at 335, quoting *Scudder v. Smith*, 331 Pa. 165, 170–71, 200 A. 601, 604 (1938). In *Consumer Party*, Senate Bill No. 270, as originally introduced, dealt with changes in laws relating to counties of the third through eighth classes. The bill was approved by the Senate and further approved by the House of Representatives with amendments. The House's amended version of the bill bore the same title as the original version of the bill. Upon reconsideration, a Committee of Conference recommended substantial amendments to the bill, adding voluminous provisions relating to the salaries and compensation of certain public officials. Both the House and the Senate adopted this amended version of Senate Bill No. 270 which was then signed into law. Several citizen-taxpayers challenged the enactment of the bill. Our Supreme Court affirmed this court's determination that the passage of Senate Bill No. 270 did not violate Article III, Section 1 of the Pennsylvania Constitution. *Consumer Party*, 510 Pa. at 181, 507 A.2d at 335.

In *Consumer Party*, the citizen-taxpayers' position suggested that any material change in a piece of legislation during its passage would cause it to be constitutionally suspect. *Id.* Our Supreme Court concluded that such an interpretation would be incompatible with the traditional legislative process. *Id.* The Pennsylvania judiciary has further stated that it "is normally loathe to substitute its judgment for that of the legislative branch under the guise of determining whether the constitutional 'purpose' of a bill has changed during the course of its passage through the legislative process." *Common Cause*, 668 A.2d at 198. As such, in order to effectuate the ends of the legislative process, the per-missible scope of amendments to a bill has been broad. *Consumer Party*.

In the present case, we conclude that the purpose of Senate Bill No. 801 did not change during the course of its passage through the legislative process. Senate Bill No. 801 has always related to compensating employees for work-related injuries.

The original version of Senate Bill No. 801 provided, *inter alia*, for "the creation and administration of a State Fund for the insurance of compensation for injuries to employes of subscribers thereto ... [and the] broadening [of] the State Workmen's Insurance Fund's permissible coverages." We note that the State Workmen's Insurance Fund was created by the Act of June 2, 1915, P.L. 762, *as amended*, 77 P.S. §§ 201—395. Pursuant to section 3 of that act, its purpose was as follows:

> Certain sums to be paid by employers ... are hereby constituted a Fund, to be known as The State Workmen's Insurance Fund, for the purpose of insuring such employers against liability under article three of the Workmen's Compensation Act of 1915, and of assuring the payment of the compensation therein provided and for the purpose of insuring such employers against liability under the Federal Coal Mine Health and Safety Act of 1969 ... and of assuring the payment of benefits therein provided and further for the purpose of insuring such employers against liability for all sums such employer shall become legally obligated to pay any employe of his as damages because of bodily injury by accident or disease, including death at any time arising therefrom, sustained by such employe arising out of and in the course of his employment.

77 P.S. § 221.

The State Workmen's Insurance Fund was created at the same time as the General Assembly enacted the Workers' Compensation Act, on June 2, 1915. Moreover, both of these statutory provisions were in accordance with the purpose of Article III, Section 18 of the Pennsylvania Constitution, permitting the General Assembly to establish a workers' compensation program in Pennsylvania. Pa. Const. art. III, § 18. *See also DeJesus v.*

*Liberty Mutual Insurance Company,* 439 Pa. 180, 268 A.2d 924 (1970). Clearly, the State Workmen's Insurance Fund has always been an integral part of the entire workers' compensation system in Pennsylvania.

The purpose of the final version of Senate Bill No. 801, as set forth in its title and as passed by the General Assembly, was, *inter alia,* as follows: (1) to define the liability of an employer to pay damages for injuries received by an employee in the course of employment; (2) to establish an elective schedule of compensation; (3) to provide a procedure for determining liability and compensation thereunder; and (4) to transfer provisions relating to the State Workmen's Insurance Fund and broaden its permissible coverages. Significantly, the final version of Senate Bill No. 801 repealed the statutory provisions of the State Workmen's Insurance Fund and substantially incorporated them into Article XIV of the Workers' Compensation Act.

Based upon our review of the various versions of Senate Bill No. 801, we conclude that the amendments to that bill, made during the course of its passage through the legislative process, did not constitute a change in its purpose. Senate Bill No. 801 consistently related to insurance coverage for injured workers in this Commonwealth. Accordingly, we conclude that petitioners and the Belan intervenors have failed to prove facts legally sufficient to establish that Act 57 was enacted in violation of Article III, Section 1 of the Pennsylvania Constitution.

■■■ While we have determined that the original purpose of Senate Bill No. 801 remained constant, petitioners and the Belan intervenors have also challenged the clarity of the title of that bill. Article III, Section 3 of the Pennsylvania Constitution provides that no bill shall contain more than one subject, which shall be clearly expressed in the title of the bill. Pa. Const. art. III, § 3. Petitioners and the Belan intervenors have alleged that the General Assembly violated this constitutional provision by failing to clearly express the purpose of Senate Bill No. 801 in its title. We disagree.

■■■ Our Supreme Court has stated that, pursuant to Article III, Section 3, a title is constitutional if it puts a reasonable person on notice of the general subject matter of the act. *In re Com., Department of Transportation,* 511 Pa. 620, 626, 515 A.2d 899, 902 (1986). Article III, Section 3 of the Pennsylvania Constitution does not require a title to be an index or synopsis of an act's contents. *Id.* at 627, 515 A.2d at 902. One who seeks to declare a title unconstitutional under Article III, Section 3 must demonstrate either that: (1) the legislators and the public were actually deceived as to the act's contents at the time of passage; or (2) the title on its face was such that no reasonable person would have been on notice as to the act's contents. *Id.*

In the present case, the title of the final version of Senate Bill No. 801 was as follows:

AN ACT Amending the Act of June 2, 1915 (P.L. 736, No. 338), entitled, as reenacted and amended, "An Act defining the liability of an employer to pay damages for injuries received by an employe in the course of employment; establishing an elective schedule of compensation; providing procedure for the determination of liability and compensation thereunder; and prescribing penalties," further providing definitions, for recovery, for liability for compensation, for financial responsibility, for compensation schedules and for wages; providing for reporting; further providing for notices, for examinations, for commutation of compensation, for exclusions, for the Workmen's Compensation Appeal Board and for procedure; providing for informal conferences; further providing for processing claims, for commutation petitions, for modifications and reversals, for pleadings, for investigations, for evidence, for appeals, for costs and attorney fees, for the Pennsylvania Workers' Compensation Advisory Council and for insurance policies; providing for settlements and for collective bargaining; further providing for ratings organizations, for rating procedures and for shared liability; providing for employer association groups; further providing for safety committees, for penalties, for prosecutions and for collection of penalties; providing for limitation of ac-

tions; further providing for assessments; providing for Workers' Compensation Judges and for transfer of administrative functions; transferring provisions relating to the State Workmen's Insurance Fund; and making a repeal.

Petitioners and the Belan intervenors have not alleged that the legislators or the public were actually deceived as to the contents of Senate Bill No. 801 at the time of its passage. Rather, petitioners and the Belan intervenors have alleged that the subject of Senate Bill No. 801 was not clearly set forth in its title. As we have previously stated, Senate Bill No. 801 has consistently related to compensation for injured workers in this Commonwealth. It is our opinion that the title of Senate Bill No. 801 has clearly expressed this subject and has provided sufficient information to put a reasonable person on notice as to the subject matter of Senate Bill No. 801. Accordingly, we conclude that petitioners and the Belan intervenors have failed to prove facts legally sufficient to establish a violation of Article III, Section 3 of the Pennsylvania Constitution.

### E. ARTICLE III, SECTIONS 2 AND 4 OF THE PENNSYLVANIA CONSTITUTION

■ In light of our determination that the enactment of Act 57 did not violate either Article III, Section 1 or Article III, Section 3 of the Pennsylvania Constitution, we also conclude that the General Assembly did not violate Article III, Sections 2 and 4 of the Pennsylvania Constitution. Article III, Sections 2 and 4 require, respectively, that bills be referred to committee and considered on three different days in each house of the

General Assembly. Pa. Const. art. III, § 2; Pa. Const. art. III, § 4. Under the facts of the present case, alleged violations of these constitutional provisions would be dependent upon a finding of a violation of Article III, Section 1 or Section 3. *See Common Cause,* 668 A.2d at 198. This is the case because we have adopted the rule followed in other jurisdictions that an amended bill need not be referred to committee and considered on three separate days if the amendments are germane to, and do not wholly change, the general subject of the bill. *Id. See also Parker v. Com., Department of Labor and Industry,* 115 Pa.Cmwlth. 93, 120–23, 540 A.2d 313, 328 (1988), *aff'd per curiam,* 521 Pa. 531, 557 A.2d 1061 (1989).

■ In the present case, we have already determined that the General Assembly did not change Senate Bill No. 801 in such a way as to violate Article III, Sections 1 or 3 of the Pennsylvania Constitution. The amendments that were made to Senate Bill No. 801 during the course of its passage through the legislative process were germane to, and did not wholly change, the general subject of the bill. Accordingly, we conclude that petitioners and the Belan intervenors have failed to prove facts legally sufficient to establish that the procedure by which the General Assembly enacted Act 57 violated Article III, Sections 2 and 4 of the Pennsylvania Constitution.[17]

### F. ARTICLE III, SECTION 5 OF THE PENNSYLVANIA CONSTITUTION

■ Petitioners and the Belan intervenors further allege that the passage of Senate Bill No. 801 violated Article III, Section 5

---

17. We note that petitioners and the Belan intervenors have also alleged in their petition for review that the General Assembly violated Article II, Section 1 of the Pennsylvania Constitution when it passed Senate Bill No. 801. Article II, Section 1 provides that legislative power in this Commonwealth shall be vested in a General Assembly, consisting of a Senate and a House of Representatives. Our Supreme Court has stated that "legislative power" is the power to make, alter and repeal laws. *Blackwell v. Com., State Ethics Commission,* 523 Pa. 347, 359, 567 A.2d 630, 636 (1989). Moreover, "[i]t is axiomatic that the Legislature cannot constitutionally dele-

gate the power to make law to any other branch of government or to any other body or authority." *Id.* at 359–60, 567 A.2d at 637.

In the present case, the decision to enact Act 57 was ultimately made by the full Senate and the full House of Representatives when they voted to pass Senate Bill No. 801. Final decision making power did not rest with the Senate Committee on Rules and Executive Nominations. Accordingly, we conclude that petitioners and the Belan intervenors have failed to prove facts legally sufficient to establish a violation of Article II, Section 1 of the Pennsylvania Constitution.

of the Pennsylvania Constitution. Article III, Section 5 provides as follows:

> No amendment to bills by one House shall be concurred in by the other, except by the vote of a majority of the members elected thereto, taken by yeas and nays, and the names of those voting for and against recorded upon the journal thereof; and reports of committees of conference shall be adopted in either House only by the vote of a majority of the members elected thereto, taken by yeas and nays, and the names of those voting recorded upon the journals.

Pa. Const. art. III, § 5.

Petitioners and the Belan intervenors construe this section as placing limitations upon the originating chamber once an amended bill has been returned to it. Pursuant to the interpretation of Article III, Section 5 proposed by petitioners and the Belan intervenors, following the passage of differing versions of a bill by the two chambers of the General Assembly, the originating chamber is limited to concurring or non-concurring in the amendments made by the other chamber and may not further amend the bill. If the originating chamber concurs, then the bill is passed and proceeds to the Governor. If the originating chamber votes to non-concur, petitioners and the Belan intervenors argue that the bill must proceed to a conference committee.

In the present case, petitioners and the Belan intervenors assert that the June 11, 1996 amendment of Senate Bill No. 801 by the Senate Committee on Rules and Executive Nominations was prohibited by Article III, Section 5 because the Senate, as the originating chamber, was restricted to voting to concur or non-concur in the House amendments. We disagree.

We initially point out that no Pennsylvania court has interpreted the language of Article III, Section 5 of the Pennsylvania Constitution. We further point out that the specific language of Article III, Section 5 does not clearly support the argument of petitioners and the Belan intervenors that concurrence or referral to a conference committee are the *exclusive* actions that may be taken by the originating chamber once an amended bill is returned to it. Article III, Section 5 does not suggest that one chamber of the General Assembly is prohibited from amending a bill that is returned to it with amendments by the other chamber. Article III, Section 5 only requires that any concurrence by one chamber in the amendments passed by the other chamber is to be by the vote of a majority of the members elected thereto.

Pursuant to Article II, Section 11 of the Pennsylvania Constitution, each house of the General Assembly has the power to determine the rules of its proceedings. Pa. Const. art II, § 11. Unquestionably the Senate has exclusive power over its internal affairs and proceedings as long as the exercise of that power is not violative of the Pennsylvania Constitution. *Zemprelli.* As our Supreme Court has stated, "[w]hen the Constitution clearly sets forth the manner in which something shall be done, that procedure must be followed to the exclusion of all others, including a procedure which the legislature may prefer." *Consumer Party,* 510 Pa. at 179, 507 A.2d at 333, quoting *School Districts of Deer Lakes and Allegheny Valley v. Kane,* 463 Pa. 554, 564, 345 A.2d 658, 663 (1975).

In the present case, Article III, Section 5 of the Pennsylvania Constitution does not clearly state that the Senate was restricted to voting to concur or non-concur in the House amendments. We note that there is no indication in the pleadings of this case that any objection was raised when Senate Bill No. 801 was referred to the Senate Committee on Rules and Executive Nominations on May 6, 1996 for further amendment.[18] There is also no indication in the pleadings of this case that any member of the Senate thought it necessary to suspend any rule of the Senate to allow for the amendment of

---

**18.** We note that the Belan intervenors did object to the actual amendment of Senate Bill No. 801 by the Senate Committee on Rules and Executive Nominations. However, such objections were only raised in the Senate Committee on Labor and Industry after Senate Bill No. 801 had al-

ready been amended by the Senate Committee on Rules and Executive Nominations. The Senate Committee on Labor and Industry ultimately reported Senate Bill No. 801, without further amendment, on June 17, 1996.

Senate Bill No. 801.[19] As such, pursuant to its authority under Senate Rule XIV.5,[20] the Senate Committee on Rules and Executive Nominations proceeded to amend Senate Bill No. 801.

We are mindful of our Supreme Court's pronouncement that legislation will not be invalidated unless it clearly, palpably and plainly violates the Pennsylvania Constitution, and any doubts are to be resolved in favor of a finding of constitutionality. *Pennsylvania Liquor Control Board*, 506 Pa. at 370, 485 A.2d at 735. *See also* 1 Pa.C.S. § 1922(3). In the present case, petitioners and the Belan intervenors have failed to convince this court that Article III, Section 5 of the Pennsylvania Constitution clearly prohibits one chamber from amending a bill that is returned to it with amendments by the other chamber.[21] As such, we cannot conclude that Article III, Section 5 has clearly been violated where the Senate Committee on Rules and Executive Nominations amended Senate Bill No. 801 on June 11, 1996 without the Senate first taking a concurrence vote on the House amendments.

Accordingly, the preliminary objections of respondents and the Loeper intervenors to petitioners' petition for review and the Belan petition for review are overruled with respect to the issues of justiciability and are sustained with respect to all other issues.

## G. MOTIONS TO STRIKE

In their preliminary objections to petitioners' petition for review, respondents have included a motion to strike the facts alleged in paragraphs 8, 9, 10, 11, 12, 20, 24, 28, 33, 34, 35, 38, 40, 47, 53, 56, 57 and in a portion of paragraph 65 of petitioners' petition for review pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(2).[22] Respondents assert that the facts alleged in these paragraphs are irrelevant and immaterial to any of the issues presented in this case. In light of our disposition of respondents' preliminary objections to petitioners' petition for review, we need not rule on the motion to strike.

In their preliminary objections to the Belan petition for review, respondents have also included a motion to strike the facts alleged in paragraphs 11, 18, 19, 20, 21, 22, 22A, 23, 26A, 37, 41, 47, 48, 51, 52, 53, 60, 68, 71, 72 and in a portion of paragraph 78 of the Belan petition for review pursuant to Pa.R.C.P. No. 1028(a)(2). Respondents assert that the facts alleged in these paragraphs are irrelevant and immaterial to any of the issues presented in this case. In light of our disposition of respondents' preliminary objections

19. Senate Rule XXVI.2 allows for the suspension of any Senate Rule, with one exception not herein relevant, by consent of a majority of the elected Senators.

20. Senate Rule XIV.5 provides as follows:

 Any bill or resolution containing House amendments which is returned to the Senate shall be referred to the Committee on Rules and Executive Nominations immediately upon the reading of the message by the clerk. The consideration of any bill or resolution containing House amendments may include the amendment of House amendments by the Committee on Rules and Executive Nominations. The vote on concurring in amendments by the House to bills or resolutions amended by the House shall not be taken until said bills or resolutions have been favorably reported, as committed or as amended, by the Committee on Rules and Executive Nominations and have been placed on the files of Senators and particularly referred to on their calendars.

 We note that petitioners and the Belan intervenors have not alleged in their petitions for review that Senate Rule XIV.5 is unconstitutional.

21. We note that petitioners have referred this court to several decisions from the Supreme Court of Alabama in support of their position. In these decisions, the Supreme Court of Alabama adopted the same reasoning proposed by petitioners and the Belan intervenors when it interpreted a provision of the Alabama Constitution which is identical to Article III, Section 5 of the Pennsylvania Constitution. We have considered the reasoning of the Supreme Court of Alabama in these decisions and recognize that it offers one possible interpretation of the constitutional language at issue in the present case. However, we conclude that it is not the only interpretation of such language. Accordingly, we decline to adopt the conclusions reached by the Supreme Court of Alabama.

22. Pa.R.C.P. No. 1028(a)(2) provides as follows:

 (a) Preliminary objections may be filed by any party to any pleading and are limited to the following grounds:

 \* \* \* \* \* \*

 (2) failure of a pleading to conform to law or rule of court or inclusion of scandalous or impertinent matter.

**1040**

to the Belan petition for review, we need not rule on this motion to strike.

Accordingly, petitioners' petition for review and the Belan petition for review are dismissed with prejudice.

FLAHERTY, J., dissents.

#### ORDER

NOW, this 1st day of April, 1997, it is hereby ordered:

1. The preliminary objections filed by respondents to the petition for review in the nature of a complaint in equity filed by petitioners are overruled with respect to the issues of justiciability and are sustained with respect to all other issues.

2. The preliminary objections filed by intervenors F. Joseph Loeper, Gibson E. Armstrong and Noah W. Wenger to the petition for review in the nature of a complaint in equity filed by petitioners are overruled with respect to the issues of justiciability and are sustained with respect to all other issues.

3. The petition for review in the nature of a complaint in equity filed by petitioners is dismissed with prejudice.

4. The preliminary objections filed by respondents to the petition for review filed by intervenors Albert V. Belan, Gerald J. LaValle, Richard A. Kasunic and Christine M. Tartaglione are overruled with respect to issues of justiciability and are sustained with respect to all other issues.

5. The preliminary objections filed by intervenors F. Joseph Loeper, Gibson E. Armstrong and Noah W. Wenger to the petition for review filed by intervenors Albert V. Belan, Gerald J. LaValle, Richard A. Kasunic and Christine M. Tartaglione are overruled with respect to issues of justiciability and are sustained with respect to all other issues.

6. The petition for review filed by intervenors Albert V. Belan, Gerald J. LaValle, Richard A. Kasunic and Christine M. Tartaglione is dismissed with prejudice.

DOYLE, Judge, concurring.

While I concur with the majority's decision to dismiss petitioners' and intervenors' petitions for review, I would hold that, under the circumstances presented in this case, the enrolled bill doctrine precludes this Court from inquiring into the manner in which Act 57 was passed. *Dintzis v. Hayden*, 146 Pa. Cmwlth. 618, 606 A.2d 660 (1992). The exception to that doctrine established by our Supreme Court in *Consumer Party of Pennsylvania v. Commonwealth*, 510 Pa. 158, 507 A.2d 323 (1986), in my view, is inapplicable here.