**COMMON CAUSE/PENNSYLVANIA, and Citizens Against New Toll Roads, and Community Environmental Legal Defense Fund, and Zero Population Growth, Inc., Petitioners,**

v.

**COMMONWEALTH of Pennsylvania, and Thomas J. Ridge, Governor, and Robert A. Judge, Sr., Secretary of Revenue, and Bradley L. Mallory, Secretary of Transportation, Respondents.**

Commonwealth Court of Pennsylvania.

Argued Dec. 10, 1997.
Decided March 31, 1998.
As Amended April 2, 1998.

Eric B. Schnurer, West Chester, for petitioners.

Gregory E. Dunlap, Harrisburg, for respondents.

John P. Krill, Jr. and Linda J. Shorey, Harrisburg, for intervenors, Sen. Robert C. Jubelirer and Matthew J. Ryan.

Before COLINS, President Judge, and McGINLEY, SMITH, FRIEDMAN, KELLEY, FLAHERTY and LEADBETTER, JJ.

KELLEY, Judge.

The present case concerns the validity of the enactment of the Act of April 17, 1997, P.L. 6 (Act 3), which made substantial amendments to the Public Transportation Law[1] and Vehicle Code.[2] Common Cause/Pennsylvania, Citizens Against New Toll Roads, Community Environmental Legal Defense Fund, and Zero Population Growth, Inc. (collectively, Petitioners) filed a nine-count petition for review in the nature of a complaint in equity (petition for review) under this court's original jurisdiction. In the petition for review, Petitioners challenge the constitutionality of the procedures followed by the General Assembly in enacting Act 3 and seek both injunctive and declaratory relief.

---

1. 74 Pa.C.S. §§ 1101–1543.

2. 75 Pa.C.S. §§ 101–9821.

Preliminary objections to the petition for review were filed by the Commonwealth of Pennsylvania, Governor Thomas J. Ridge, Secretary of Revenue Robert A. Judge, Sr., and Secretary of Transportation Bradley L. Mallory (collectively, Respondents). Preliminary objections to the petition for review were also filed by Senator Robert C. Jubelirer and Representative Matthew J. Ryan (collectively, Intervenors).[3] Those preliminary objections are now before this court for disposition.[4]

The parties in this case have not stipulated to facts relating to the enactment of Act 3. However, this court can take judicial notice of the Legislative Journals, as well as the various versions of House Bill 67 (HB 67), the bill ultimately enacted as Act 3 of 1997.[5]

## I. FACTS

Act 3 began as HB 67, Printer's No. 76, and was introduced in the Pennsylvania House of Representatives as an act amending the Vehicle Code, providing for vehicle registration periods of less than one year. HB 67 was originally entitled as "AN ACT Amending Title 75 (Vehicles) of the Pennsylvania Consolidated Statutes, further providing for vehicle registration periods of less than one year."

HB 67 was referred to the House Committee on Transportation on January 28, 1997 and reported back to the full House of Representatives as committed on March 12, 1997. After its first consideration, HB 67 was referred to the Committee on Appropriations and reported back to the full House of Representatives as committed on March 17, 1997. On its third consideration, HB 67 was amended and then reported to the full House of Representative. HB 67, as amended, was

approved by the full House of Representatives on March 18, 1997.

On March 19, 1997, HB 67, bearing Printer's No. 1069, was referred by the President of the Senate to the Senate Transportation Committee and reported to the full Senate as committed on April 2, 1997. On its third consideration, HB 67 was amended and then reported to the full Senate for passage. The Senate then approved HB 67, as amended, and bearing Printer's No. 1415, on April 8, 1997.

Following passage by the Senate, HB 67 was returned to the House of Representatives for concurrence in the amendments made by the Senate. HB 67 was referred to the House Committee on Rules on April 9, 1997. The House Committee on Rules amended HB 67 and changed its title as follows:

AN ACT Amending Titles 74 (Transportation) and 75 (Vehicles) of the Pennsylvania Consolidated Statutes, further providing for annual appropriation and computation of subsidy and for distribution of funding; providing for distribution of supplemental funding; further providing for use of funds distributed; providing for public transportation grants management accountability, for competitive procurement and for the Public Transportation Assistance Fund; further providing for period of registration, for duties of agents, for registration and other fees, for requirements for periodic inspection of vehicles, for limits on number of towed vehicles, for operation of certain combinations on interstate and other highways, for width and length of vehicles; providing for liquid fuels and fuels permits and bond or deposit of securities, for imposition of liquid fuels and fuels tax, for taxpayer, for distributor's report and payment of tax, for determination of tax,

3. On September 25, 1997, Senator Jubelirer and Representative Ryan filed a petition for leave to intervene in this case. Senator Jubelirer is President *Pro Tempore* of the Senate of Pennsylvania. Representative Matthew J. Ryan is Speaker of the Pennsylvania House of Representatives. The Intervenors support the views of the named respondents, arguing in favor of the validity of Act 3. By order dated October 20, 1997, this court granted their petition to intervene.

4. On December 3, 1997, State Representatives Patricia Carone, Edward Krebs, Thomas Tangretti and Greg Vitali submitted a brief of amici curiae in opposition to the preliminary objections.

5. In this opinion, we shall refer to the enacted act as "Act 3." We shall refer to prior versions of the bill as it appeared during the course of its passage through the General Assembly as "HB 67."

penalties and interest, for examination of records and equipment, for retention of records by distributors and dealers, for disposition and use of tax, for discontinuance or transfer of business, for suspension or revocation of permits, for lien of taxes, penalties and interest, for collection of unpaid taxes, for reports from common carriers, for violations and reward for detection of violations, for refunds, for diesel fuel importers and transporters, for prohibiting use of dyed diesel fuel, for disposition of fees, fines and forfeitures, for certified copies of records and for uncollectible checks; further providing for distribution of State highway maintenance funds and for standards and methodology for data collection; providing for dirt and gravel road maintenance; further providing for imposition of tax and additional tax; providing for tax on alternative fuels; further providing for disposition of tax revenue; making an appropriation; and making repeals.

HB 67, as amended and designated Printer's No. 1531, was then reported to the full House of Representatives on April 16, 1997. The House of Representatives passed HB 67 without changes on April 16, 1997, by a vote of 107–88. HB 67 was then returned to the

Senate, where it was passed by the full Senate on April 16, 1997 by a vote of 26–23.

HB 67 was signed in both the House of Representatives and the Senate on April 16, 1997. The next day, Governor Tom Ridge signed HB 67 into law as Act 3 of 1997.

## II. PETITION FOR REVIEW

On September 9, 1997, Petitioners filed a petition for review in which they allege a series of constitutional violations in the enactment of Act 3. In the petition for review, Petitioners aver that the amendments made in the House of Representatives after the initial passage of HB 67 by the House of Representatives and Senate altered or amended the original purpose of the bill such that its subsequent passage, without referral to committee or consideration on three different days by the House of Representatives and Senate, violated Article III, section 1, 2, 3 and 4 of the Pennsylvania Constitution.[6] Petitioners further allege that the House of Representatives or the House Committee on Rules violated Article III, Section 5 of the Pennsylvania Constitution[7] when it amended HB 67 after its initial passage by the House of Representatives and Senate. Petitioners also aver that the House of Representatives and the House Rules Committee violated Article II, Section 1[8] and Article III, Section 4

6. Article III, Section 1 of the Pennsylvania Constitution provides as follows:

> No law shall be passed except by bill, and no bill shall be so altered or amended, on its passage through either House, as to change its original purpose.

Article III, Section 2 of the Pennsylvania Constitution provides as follows:

> No bill shall be considered unless referred to a committee, printed for the use of the members and returned therefrom.

Article III, Section 3 of the Pennsylvania Constitution provides as follows:

> No bill shall be passed containing more than one subject, which shall be clearly expressed in its title, except a general appropriation bill or a bill codifying or compiling the law or a part thereof.

Article III, Section 4 of the Pennsylvania Constitution provides as follows:

> Every bill shall be considered on three different days in each House. All amendments made thereto shall be printed for the use of the members before the final vote is taken on the bill and before the final vote is taken, upon written request addressed to the presiding officer of either House by at least twenty-five per cent of the members elected to that House, any

bill shall be read at length in that House. No bill shall become a law, unless on its final passage the vote is taken by yeas and nays, the names of the persons voting for and against it are entered on the journal, and a majority of the members elected to each House is recorded thereon as voting in its favor.

7. Article III, Section 5 of the Pennsylvania Constitution provides as follows:

> No amendment to bills by one House shall be concurred in by the other, except by the vote of a majority of the members elected thereto, taken by yeas and nays, and the names of those voting for and against recorded upon the journal thereof, and reports of committees of conference shall be adopted in either House only by the vote of a majority of the members elected thereto, taken by yeas and nays, and the names of those voting recorded upon the journals.

8. Article II, Section 1 of the Pennsylvania Constitution provides as follows:

> The legislative power of this Commonwealth shall be vested in a General Assembly, which

of the Pennsylvania Constitution because the full House of Representatives and Senate were not afforded an opportunity to reject HB 67 as originally adopted by the House of Representatives and the Senate before voting on the proposed amendment to HB 67. Finally, Petitioners allege that the General Assembly violated Article III, Sections 1–5 of the Pennsylvania Constitution when it enacted Act 3 in light of Article VIII, Section 11 of the Pennsylvania Constitution[9] and this court's ruling in *Common Cause v. Commonwealth*, 668 A.2d 190 (Pa.Cmwlth.1995), *aff'd* 544 Pa. 512, 677 A.2d 1206 (1996). Petitioners request this court to declare that Act 3 was unconstitutionally enacted and to enjoin Respondents from performing the provisions of Act 3.

## III. PRELIMINARY OBJECTIONS

In response to the petition for review, Respondents and Intervenors filed with this court preliminary objections. They allege that Petitioners' petition for review should be dismissed because: (1) Petitioners lack standing; (2) Petitioners are seeking adjudication of a non-justiciable, political question; and (3) Petitioners have failed to state a cause of action upon which relief can be granted. Respondents and Intervenors further request this court to strike portions of Petitioners' petition for review.

Preliminarily, we note that preliminary objections, the end result of which would be dismissal of a cause of action, should be sustained only in cases that are clear and free from doubt. *League of Women Voters of Pennsylvania v. Commonwealth*, 692 A.2d 263 (Pa.Cmwlth.1997). The test is whether it is clear from all of the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish his or her right to relief. *Id.* In ruling upon preliminary objections in the nature of a demurrer, we must accept as true all well-pleaded allegations of material fact and all inferences reasonably deducible therefrom. *Pennsylvania School Boards Association, Inc. v. Commonwealth Association of School Administrators, Teamsters Local 502*, 696 A.2d 859 (Pa.Cmwlth.1997).

We shall begin our discussion by addressing Respondents' request to strike portions of Petitioners' petition for review.

### A. INCLUSION OF SCANDALOUS OR IMPERTINENT MATTER

Respondents and Intervenors aver that the six-page "Introductory Statement" of Petitioners' petition for review is scandalous and impertinent and should be stricken pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(2). We agree.

---

shall consist of a Senate and a House of Representatives.

**9.** Article VIII, section 11 provides:

(a) All proceeds from gasoline and other motor fuel excise taxes, motor vehicle registration fees and license taxes, operators' license fees and other excise taxes imposed on products used in motor transportation after providing therefrom for (a) cost of administration and collection, (b) payment of obligations incurred in the construction and reconstruction of public highways and bridges shall be appropriated by the General Assembly to agencies of the State or political subdivisions thereof; and used solely for construction, reconstruction, maintenance and repair of and safety on public highways and bridges and costs and expenses incident thereto, and for the payment of obligations incurred for such purposes, and shall not be diverted by transfer or otherwise to any other purpose, except that loans may be made by the State from the proceeds of such taxes and fees for a single period not exceeding eight months, but no such loan shall be made within the period of one year from any preceding loan, and every loan made in any fiscal year shall be repayable within one month after the beginning of the next fiscal year.

(b) All proceeds from aviation fuel excise taxes, after providing therefrom for the cost of administration and collection, shall be appropriated by the General Assembly to agencies of the State or political subdivisions thereof and used solely for: the purchase, construction, reconstruction, operation, and maintenance of airports and other air navigation facilities; aircraft accident investigation; the operation, maintenance and other costs of aircraft owned or leased by the Commonwealth; any other purpose reasonably related to air navigation including but not limited to the reimbursement of airport property owners for property tax expenditures; and costs and expenses incident thereto and for the payment of obligations incurred for such purposes, and shall not be diverted by transfer or otherwise to any other purpose.

Rule 1028(a)(2) provides that preliminary objections may be filed for failure of a pleading to conform to law or rule of court or "inclusion of scandalous or impertinent matter." To be scandalous and impertinent, the allegations must be immaterial and inappropriate to the proof of the cause of action. *Department of Environmental Resources v. Peggs Run Coal Company,* 55 Pa.Cmwlth. 312, 423 A.2d 765 (1980).

In their introductory statement, Petitioners have provided us with an editorialized history of lawmaking in Pennsylvania. Rather than setting forth factual allegations relevant to the procedure by which HB 67 was considered and passed, Petitioners have chosen to include allegations regarding the procedures used by the Governor and the legislative leadership in enacting certain other pieces of legislation, not here before us. These allegations are immaterial to Petitioners' cause of action. Petitioners' introductory statement also contains statements which improperly cast a derogatory light on the legislative and executive branch leadership. Such scandalous statements have no place in a pleading.

Accordingly, the Petitioner's introductory statement is stricken in its entirety from the petition for review.

### B. STANDING

Respondents and the Intervenors object to the petition for review on the grounds that Petitioners lack standing.[10] The Intervenors assert that the petition for review does not contain any allegation that Petitioners, or any of its members, sustained a direct, immediate and substantial injury which was causally connected to the alleged constitutional violations by the General Assembly in the enactment of Act 3.

We begin our analysis by pointing out that the parameters of taxpayer standing in this Commonwealth have been defined by our Supreme Court in the case of *Application of Biester,* 487 Pa. 438, 409 A.2d 848

(1979). In that case, our Supreme Court stated that the "purpose of the requirement of standing is to protect against improper plaintiffs." *Id.* at 442–43, 409 A.2d at 851. In order to meet this requirement, a plaintiff must allege and prove an interest in the outcome of the suit which surpasses "the common interest of all citizens in procuring obedience to the law." *Id.* quoting *Wm. Penn Parking Garage v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975). To surpass the common interest of all citizens, the interest must be substantial, direct, and immediate. *Id.*

Nevertheless, the Supreme Court recognized that certain cases exist in which the facts warrant the granting of standing to taxpayers where their interests arguably are not substantial, direct and immediate. *Biester,* 487 Pa. at 444, 409 A.2d at 852; *Consumer Party of Pennsylvania v. Commonwealth,* 510 Pa. 158, 168, 507 A.2d 323, 328 (1986). The relaxing of those interest requirements in certain cases where there is little causal connection between the action complained of and the alleged injury is best explained by the basic policy considerations underlying taxpayer standing. *Consumer Party,* 510 Pa. at 168–69, 507 A.2d at 328. Our Supreme Court articulated these policy considerations in *Biester* as follows:

> "The ultimate basis for granting standing to taxpayers must ... be sought outside the normal language of the courts. Taxpayers' litigation seems designed to enable a large body of the citizenry to challenge governmental action which would otherwise go unchallenged in the courts because of the standing requirement. Such litigation allows the courts, within the framework of traditional notions of 'standing,' to add to the controls over public officials inherent in the elective process the judicial scrutiny of the statutory and constitutional validity of their acts."

*Biester,* 487 Pa. at 443 n. 5, 409 A.2d at 851 n. 5, quoting Note, Taxpayers' Suits: A Sur-

---

10. We note that Respondents have not presented any argument with respect to this issue in their brief before this court despite having included it in their preliminary objections to the amended petition for review. Argument on the standing issue is, however, presented in the brief of the Intervenors.

vey and Summary, 69 Yale L.J. 895, 904 (1960).

In *Consumer Party*, the Supreme Court held that a taxpayer seeking standing to sue must allege a substantial, direct and immediate interest in the outcome of the suit *unless the taxpayer can show:*

1. the governmental action would otherwise go unchallenged;

2. those directly and immediately affected by the complained of expenditures are beneficially affected and not inclined to challenge the action;

3. judicial relief is appropriate;

4. redress through other channels is unavailable; and

5. no other persons are better situated to assert the claim.

*Consumer Party,* 510 Pa. at 170, 507 A.2d at 329.

■ Based upon the above five factors, we conclude that the circumstances of the present case warrant the granting of standing to petitioners. We believe that the actions taken by the General Assembly in passing HB 67 would likely go unchallenged but for the present proceeding, because the very individuals who enacted such legislation are not going to be inclined to challenge the constitutionality of the process by which Act 3 was enacted. *See League of Women Voters.* We further believe that judicial relief may be appropriate since the ultimate function of the judiciary is to determine the constitutionality of an act. *Zemprelli v. Daniels,* 496 Pa. 247, 255–56, 436 A.2d 1165, 1169 (1981). Moreover, redress through other channels is unavailable as there is no administrative agency which can provide relief and the members of the General Assembly, themselves, are unlikely to provide a meaningful mechanism for redress. Finally, we believe that there are no other persons better situated to assert the constitutional claims which have been raised in the present case than Petitioners.

We, therefore, conclude that Petitioners have standing to raise the constitutional claims which they have set forth in their petition for review. Accordingly, Respondents' and Intervenors' preliminary objections to the petition for review on the grounds that Petitioners lack standing are overruled.

## C. JUSTICIABILITY

Respondents and Intervenors further assert that the Petitioners' claims are nonjusticiable under the (1) Enrolled Bill Doctrine, (2) Political Question Doctrine, and the (3) Speech and Debate Clause. We disagree.

### 1. *Enrolled Bill Doctrine*

■ We initially point out that acts of the General Assembly enjoy a strong presumption of constitutionality, and the party challenging an act has a heavy burden of persuasion. 1 Pa.C.S. § 1922(3); *Pennsylvania Liquor Control Board v. Spa Athletic Club,* 506 Pa. 364, 370, 485 A.2d 732, 735 (1984). Legislation will not be invalidated unless it clearly, palpably and plainly violates the Pennsylvania Constitution, and any doubts are to be resolved in favor of a finding of constitutionality. *Spa Athletic Club,* 506 Pa. at 370, 485 A.2d at 735.

■ To preserve the delicate balance which is critical to the proper functioning of a tripartite system of government, our Supreme Court has exercised judicial restraint to avoid an intrusion upon the prerogatives of a sister branch of government. *Consumer Party,* 510 Pa. at 176–77, 507 A.2d at 332. Pursuant to this principle, our Supreme Court has rejected challenges to the procedural regularity of the passage of legislation on the grounds that the matter is non-justiciable under the Enrolled Bill Doctrine.[11] *Id.* at 177, 507 A.2d at 332. As explained in *Kilgore v. Magee,* 85 Pa. 401, 412 (1877), the Enrolled Bill Doctrine provides that:

[W]hen a law has been passed and approved and certified in due form, it is no

---

11. An enrolled bill is a bill which has been certified by the Speaker of the House of Representatives and the presiding officer of the Senate as having passed the General Assembly, which has been signed by the Governor, and which has been filed with the Secretary of the Commonwealth. *Pennsylvania AFL–CIO v. Commonwealth,* 691 A.2d 1023, 1031 n. 12 (Pa.Cmwlth. 1997).

part of the duty of the judiciary to go behind the law as duly certified to inquire into the observance of form in its passage.... The presumption in favor of regularity is essential to the peace and order of the state.

While the Enrolled Bill Doctrine operates as an appropriate means of judicial restraint to avoid intrusion by the judiciary into the prerogatives of a co-equal branch of government, the legitimacy of such abstention is dependent upon the situation presented. *Common Cause*, 668 A.2d at 195; *Consumer Party*, 510 Pa. at 177, 507 A.2d at 333. The countervailing concern is the judiciary's mandate to insure that government functions within the bounds of constitutional prescription. *Consumer Party*, 510 Pa. at 177, 507 A.2d at 333. The judiciary may not abdicate this responsibility under the guise of its deference to a co-equal branch of government. *Id.* at 177–78, 507 A.2d at 333.

Our Supreme Court has stated that "while it is appropriate to give due deference to a co-equal branch of government as long as it is functioning within constitutional constraints, it would be a serious dereliction on our part to deliberately ignore a clear constitutional violation." *Id.* at 178, 507 A.2d at 333; *Common Cause*, 668 A.2d at 195. Where the facts are agreed upon and the question presented is whether or not a violation of a mandatory constitutional provision has occurred, judicial intervention in the legislative process is warranted. *Consumer Party*.

For purposes of ruling on the preliminary objections of Respondents and the Intervenors, this court must take as true all well-pleaded facts and inferences deducible therefrom. *Dintzis v. Hayden*, 146 Pa. Cmwlth. 618, 606 A.2d 660 (1992). In the present case, Petitioners have not alleged in their petitions for review a mere violation of an internal rule of the General Assembly which is not mandated by the Pennsylvania Constitution. *See Pennsylvania AFL–CIO v. Commonwealth*, 691 A.2d 1023 (Pa. Cmwlth.1997); *League of Women Voters*. Rather, in counts one through nine of their petition for review, Petitioners have alleged that mandatory provisions of the Pennsylvania Constitution were violated. Petitioners assert, *inter alia*, that Act 3 contained more than one subject and that its purpose was changed during the legislative process, both of which are allegations presenting questions of whether mandatory constitutional provisions have been violated. *Id.* Accordingly, the Enrolled Bill Doctrine does not bar this court's analysis of the procedure used by the General Assembly in the passage of Act 3 to determine whether such procedure complied with the mandates of the Pennsylvania Constitution.

### 2. *Political Question Doctrine*

Similarly, in order to preserve the balance, which is critical to the proper functioning of a tripartite system of government, judicial restraint has also been exercised pursuant to the Political Question Doctrine. *AFL–CIO*. The Political Question Doctrine, generally considered to derive from the principle of separation of powers, recognizes that the executive branch, the legislature and the judiciary are independent, co-equal branches of government. *Sweeney v. Tucker*, 473 Pa. 493, 375 A.2d 698 (1977). Each of the three branches have powers and duties upon which neither of the other two branches may intrude. *Id.* Pursuant to this doctrine, the courts will not review the actions of another branch of government where the Constitution entrusts those actions to that other branch. *Id.* Ordinarily, the exercise of the judiciary's power to review the constitutionality of legislative action does not offend the principle of separation of powers. *Id.* at 508, 375 A.2d at 705. However, where our Constitution confers a power exclusively upon the legislature, any challenge to the legislature's exercise of that power presents a nonjusticiable political question. *Id.* But whether a power has been vested in another branch of government is an "exercise in constitutional interpretation." *Id.* at 510, 375 A.2d at 706.

The Pennsylvania Constitution commits certain matters involving each house of the General Assembly to that house. *AFL–CIO*, 691 A.2d at 1033. Article II, Section 1 of the Pennsylvania Constitution grants legislative

power to the General Assembly, which shall consist of a Senate and a House of Representatives. Article II, Section 11 of the Pennsylvania Constitution states that "each House shall have power to determine the rules of its proceedings." These sections· of the Pennsylvania Constitution provide the basis for the contention by Respondents and the Intervenors that the constitutional violations alleged by Petitioners in their petitions for review present non-justiciable political questions.

Without doubt, the General Assembly has exclusive power over its internal affairs and proceedings. However, this power does not give the General Assembly the right to usurp the judiciary's function as ultimate interpreter of the Constitution. *Baker v. Carr*, 369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663 (1962); *Zemprelli*, 496 Pa. at 255, 436 A.2d at 1169; *AFL–CIO*, 691 A.2d at 1033. In fact, it is the duty of the courts to invalidate legislative action that is repugnant to the Constitution. *Zemprelli*, 496 Pa. at 256, 436 A.2d at 1169; *AFL–CIO*, 691 A.2d at 1033.

In the present case, Petitioners have alleged numerous constitutional violations in the legislative process by which the General Assembly enacted Act 3. As we have previously stated, we will not abdicate our responsibility to insure that government functions within the bounds of constitutional prescription under the guise of deference to a co-equal branch of government. Accordingly, the Political Question Doctrine does not bar this court's analysis of the procedure used by the General Assembly in the passage of Act 3 to determine whether such procedure complied with the mandates of the Pennsylvania Constitution.

### 3. Speech and Debate Clause

Respondents and the Intervenors further assert that the Speech and Debate Clause of the Pennsylvania Constitution [12] precludes judicial inquiry into the constitutional violations alleged by Petitioners in their petitions for review. We disagree with this assertion.

The Speech and Debate Clause of the Pennsylvania Constitution provides as follows:

> The members of the General Assembly shall in all cases, except treason, felony, violation of their oath of office, and breach or surety of the peace, be privileged from arrest during their attendance at the sessions of their respective Houses and in going to and returning from the same; and for any speech or debate in either House they shall not be questioned in any other place.

Pa. Const. art. II, § 15. Our Supreme Court has observed that the text of the Speech and Debate Clause of the Pennsylvania Constitution is essentially the same as its federal counterpart, U.S. Const. art. I, § 6. *Consumers Education and Protective Association v. Nolan*, 470 Pa. 372, 382, 368 A.2d 675, 680 (1977). The legislative immunity created by the Speech and Debate Clause "insures that legislators are free to represent the interests of their constituents without fear that they will be later called to task in the courts for that representation." *AFL–CIO*, 691 A.2d at 1034, quoting *Powell v. McCormack*, 395 U.S. 486, 503, 89 S.Ct. 1944, 1954, 23 L.Ed.2d 491 (1969). The Speech and Debate Clause has been read broadly in order to effectuate its purpose. *Sweeney*, 473 Pa. at 505, 375 A.2d at 703; *AFL–CIO* at 1034. The Speech and Debate Clause prohibits inquiry into those things generally said or done in the House of Representatives or Senate in the performance of official duties and into the motivation for those acts. *Powell*, 395 U.S. at 502–03, 89 S.Ct. at 1953–55; *AFL–CIO*, 691 A.2d at 1034.

Clearly, the very core of the Speech and Debate Clause is the protection of "the integrity of the legislative process by insuring the independence of individual legislators." *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 502, 95 S.Ct. 1813, 1821, 44 L.Ed.2d 324, (1975), quoting *United States v. Brewster*, 408 U.S. 501, 507, 92 S.Ct. 2531, 2535, 33 L.Ed.2d 507 (1972). However, legislative immunity created by the Speech and Debate Clause does not, of course, bar all judicial review of legislative acts. *Powell*,

---

12. Pa. Const. art. II, § 15.

395 U.S. at 503, 89 S.Ct. at 1954–55, citing *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803). As the United States Supreme Court stated in *Powell:*

> The purpose of the protection afforded legislators is not to forestall judicial review of legislative action but to insure that legislators are not distracted or hindered in the performance of their legislative tasks by being called into court to defend their actions.

395 U.S. at 505, 89 S.Ct. at 1955. *See also Sweeney*, 473 Pa. at 506, 375 A.2d at 703–04.

In the present case, Petitioners are seeking judicial review of legislative action as described in *Powell.* They have alleged that the General Assembly, as a whole, violated mandatory provisions of the Pennsylvania Constitution when it enacted Act 3. Based upon the pleadings in this case, we are not persuaded that judicial review of the legislative action taken by the General Assembly in this case is inappropriate. We, therefore, conclude that the claims by Petitioners are not barred by the Speech and Debate Clause of the Pennsylvania Constitution.

Accordingly, Respondents' and Intervenors' preliminary objections to the petition for review on the grounds that Petitioners' claims are non-justiciable are overruled. We now turn to the Respondents' and Intervenors' preliminary objections in the nature of a demurrer.

### D. DEMURRER FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Respondents and Intervenors contend that we should grant their preliminary objections in the nature of a demurrer to the extent that Petitioners have failed to state a claim upon which relief may be granted. In reviewing the legal sufficiency of Petitioners' claims, we must accept as true all of the well-pleaded material facts set forth therein as well as all reasonable inferences that may be drawn from those facts. *Pennsylvania School Boards Association*, 696 A.2d at 869. Preliminary objections in the nature of a demurrer will be sustained only where the pleading is clearly insufficient to establish a right to relief, and any doubt must be re-solved in favor of overruling the demurrer. *Gaster v. Township of Nether Providence*, 124 Pa.Cmwlth. 595, 556 A.2d 947 (1989).

### 1. *Article III, Section 1 of the Pennsylvania Constitution*

Petitioners allege that the General Assembly violated Article III, Section 1 of the Pennsylvania Constitution by so amending HB 67 on its passage through the General Assembly as to change its original purpose. We disagree.

Article III, Section 1 of the Pennsylvania Constitution provides that no bill shall be so altered on its passage through either house as to change its original purpose. In discussing Article III, Section 1 of the Pennsylvania Constitution, our Supreme Court has stated that the purpose of the constitutional requirements relating to the enactment of laws "was to put the members of the Assembly and others interested on notice so they might vote on it with circumspection." *Consumer Party*, 510 Pa. at 179–80, 507 A.2d at 335.

In *Consumer Party*, Senate Bill No. 270, as originally introduced, dealt with changes in laws relating to counties of the third through eighth classes. The bill was approved by the Senate and further approved by the House of Representatives with amendments. The House's amended version of the bill bore the same title as the original version of the bill. Upon reconsideration, a Committee of Conference recommended substantial amendments to the bill, adding voluminous provisions relating to the salaries and compensation of certain public officials. Both the House of Representatives and the Senate adopted this amended version of Senate Bill No. 270 which was then signed into law. Several citizen-taxpayers challenged the enactment of the bill. Our Supreme Court affirmed this court's determination that the passage of Senate Bill No. 270 did not violate Article III, Section 1 of the Pennsylvania Constitution. *Consumer Party*, 510 Pa. at 181, 507 A.2d at 335.

In *Consumer Party*, the citizen-taxpayers' position suggested that any material change in a piece of legislation during its passage would cause it to be constitutionally suspect.

*Id.* Our Supreme Court concluded that such an interpretation would be incompatible with the traditional legislative process. *Id.* The Pennsylvania judiciary has further stated that it "is normally loathe to substitute its judgment for that of the legislative branch under the guise of determining whether the constitutional 'purpose' of a bill has changed during the course of its passage through the legislative process." *Common Cause,* 668 A.2d at 198. As such, in order to effectuate the ends of the legislative process, the permissible scope of amendments to a bill has been broad. *Consumer Party.*

Here, the original version of HB 67 began as a two-page bill effecting changes in the Vehicle Code, specifically the seasonal registration of certain vehicles. The House of Representatives and the Senate initially approved various versions of HB 67. Upon consideration of the Senate version of HB 67, Printer's No. 1415, by the House Committee on Rules, substantial amendments were made to the bill. Voluminous provisions pertaining to vehicle registration fees, highway maintenance funding allocations, trucking regulations, and fuel taxes, as well as changes to the Public Transportation Law governing mass transit were added. Both the House of Representatives and the Senate adopted this amended version of HB 67, which was then signed into law.

Although HB 67 was transformed into a 112–page law amending various provisions of the Vehicle Code and Public Transportation Law, the purpose of HB 67, throughout the enactment process, remained the same. The purpose of HB 67 at its inception and its conclusion was to effect changes in the laws governing Pennsylvania's vehicular transportation system. Accordingly, we conclude that Petitioners will be unable to prove facts legally sufficient to establish that Act 3 was enacted in violation of Article III, Section 1 of the Pennsylvania Constitution.

*2. Article III, Section 3 of the Pennsylvania Constitution*

Petitioners have alternatively argued that if the original purpose of HB 67 was not changed by the amendments, then its original purpose was not clearly expressed in its original title in violation of Article III, Section 3 of the Pennsylvania Constitution. We disagree.

Article III, Section 3 of the Pennsylvania Constitution provides that no bill shall contain more than one subject, which shall be clearly expressed in the title of the bill. Our Supreme Court has stated that, pursuant to Article III, Section 3, a title is constitutional if it puts a reasonable person on notice of the general subject matter of the act. *In re Department of Transportation,* 511 Pa. 620, 626, 515 A.2d 899, 902 (1986). Article III, Section 3 of the Pennsylvania Constitution does not require a title to be an index or synopsis of an act's contents. *Id.* at 627, 515 A.2d at 902. One who seeks to declare a title unconstitutional under Article III, Section 3 must demonstrate either that: (1) the legislators and the public were actually deceived as to the act's contents at the time of passage; or (2) the title on its face was such that no reasonable person would have been on notice as to the act's contents. *Id.*

Here, Petitioners have not alleged that the legislators or the public were actually deceived as to the contents of HB 67 at the time of its passage. Rather, Petitioners have alleged that the subject of HB 67 was not clearly set forth in its title. As we have previously stated, the general subject matter of HB 67 has consistently related to vehicular transportation. It is our opinion that the original title of HB 67 has clearly expressed this subject and has provided sufficient information to put a reasonable person on notice as to the subject matter of HB 67. Accordingly, we conclude that Petitioners will be unable to prove facts legally sufficient to establish a violation of Article III, Section 3 of the Pennsylvania Constitution.

*3. Article III, Sections 2&4 of the Pennsylvania Constitution*

Petitioners further argue that HB 67 was not referred to committee in either house of General Assembly after its original purpose was changed in violation of Article III, Section 2 and Article III, Section 4 of the Pennsylvania Constitution. We disagree.

■ Article III, Sections 2 and 4 require, respectively, that bills be referred to committee and considered on three different days in each house of the General Assembly. Pa. Const. art. III, § 2; Pa. Const. art. III, § 4. "[A]n amended bill need not be referred to committee and considered on three separate days if the amendments are germane to, and do not wholly change, the general subject of the bill." *AFL–CIO,* 691 A.2d at 1037.

Under the facts presented here, the alleged violations of these constitutional provisions would be dependent upon a finding of a violation of Article III, Section 1 or Section 3. *See AFL–CIO,* 691 A.2d at 1037. In light of our determination that the enactment of Act 3 did not violate either Article III, Section 1 or Article III, Section 3 of the Pennsylvania Constitution, we also conclude that the General Assembly did not violate Article III, Sections 2 and 4 of the Pennsylvania Constitution. The amendments that were made to HB 67 during the course of its passage through the legislative process were germane to, and did not wholly change, the general subject of the bill. Accordingly, we conclude that Petitioners will be unable to prove facts legally sufficient to establish that the procedure by which the General Assembly enacted Act 3 violated Article III, Sections 2 and 4 of the Pennsylvania Constitution.

### 4. *Article III, Section 5 of the Pennsylvania Constitution*

■ Petitioners further allege that the House of Representatives or the House Committee on Rules violated Article III, Section 5 of the Pennsylvania Constitution when it amended HB 67 after its initial passage by the House of Representatives and Senate in accordance with Article III, Section 4. Petitioners argue that section 5 prohibits the originating chamber from amending its own bill once it has been amended by the other chamber and returned. We disagree.

Article III, Section 5 provides as follows:

No amendment to bills by one House shall be concurred in by the other, except by the vote of a majority of the members elected thereto, taken by yeas and nays, and the names of those voting for and against recorded upon the journal thereof; and reports of committees of conference shall be adopted in either House only by the vote of a majority of the members elected thereto, taken by yeas and nays, and the names of those voting recorded upon the journals.

Contrary to Petitioners' assertion, Article III, Section 5 does not prohibit one chamber of the General Assembly from amending a bill that is returned to it with amendments made by the other chamber. *AFL–CIO,* 691 A.2d at 1038–39. Article III, Section 5 only requires that amendments made to a bill by one chamber be voted upon and approved by a constitutional majority of the members of the other chamber. *Id.*

Here, the final version of HB 67, with the amendments made by the House Rules Committee, was voted upon and approved by a constitutional majority of the members of both houses in accordance with Article III, Section 5. HB 67 was passed by the House of Representatives by a vote of 107–88 and then by the Senate by a vote of 26–23. Accordingly, we conclude that Petitioners will be unable to prove facts legally sufficient to establish that the procedure by which the General Assembly enacted Act 3 violated Article III, Section 5 of the Pennsylvania Constitution.

### 5. *Article II, Section 1 and Article III, Section 4 of the Pennsylvania Constitution*

Petitioners contend the House of Representatives and the House Rules Committee violated Article II, Section 1 and Article III, Section 4 of the Pennsylvania Constitution because the full House of Representatives and Senate were not afforded an opportunity to reject HB 67 as initially approved by the House of Representatives and the Senate before voting on the proposed amendments to HB 67 by the House Committee on Rules. We disagree.

■ Article II, Section 1 provides that legislative power in this Commonwealth shall be vested in a General Assembly, consisting of a Senate and a House of Representatives. Our Supreme Court has stated that "legislative power" is the power to make, alter and

repeal laws. *Blackwell v. State Ethics Commission*, 523 Pa. 347, 359, 567 A.2d 630, 636 (1989). The Legislature is constitutionally restrained from delegating their legislative power to any other branch of government or to any other body or authority. *Id.* at 359–60, 567 A.2d at 637.

Article III, Section 4 of the Pennsylvania Constitution states in pertinent part:

> Every bill shall be considered on three different days in each House.... No bill shall become a law, unless on its final passage the vote is taken by yeas and nays, the names of the persons voting for and against it are entered on the journal, and a majority of the members elected to each House is recorded thereon as voting in its favor.

 In the present case, although the amendments were made by the House Rules Committee, the decision to enact Act 3 was ultimately made by the full House of Representatives and the full Senate when they voted final passage of Act 3 by constitutional majority vote. The final decision making power did not rest with the House Committee on Rules as both chambers of the General Assembly had the power to return negative votes on the final version of HB 67 presented to them. Accordingly, we conclude that Petitioners will be unable to prove facts legally sufficient to establish a violation of Article II, Section 1 and Article III, Section 4 of the Pennsylvania Constitution.

### 6. *Article VIII, section 11 of the Pennsylvania Constitution*

Petitioners further allege that the General Assembly violated Article III, sections 1–5 of the Pennsylvania Constitution when it enacted Act 3 because Article VIII, section 11 of the Pennsylvania Constitution delineates, specifies and identifies "proceeds from gasoline and other motor fuel excise taxes, motor vehicle registration fees and license taxes, operators' license fees and other excise taxes imposed on products used in motor transportation" as a subject of legislation constitutionally distinct for purposes of Article III just as Article III, sections 3 and 11 so delineate, specify and identify "a general appropriation bill" as constitutionally distinct

for purposes of Article III, Sections 1–5. We disagree.

The Pennsylvania Constitution clearly distinguishes a general appropriations bill as constitutionally distinct for the purposes of Article III, Section 1 through 5, by imposing unique restrictions on the enactment of a general appropriation bill. *Common Cause*. Article III, Section 3 provides that "No bill shall be passed containing more than one subject, which shall be clearly expressed in its title, *except a general appropriation bill* or a bill codifying or compiling the law or a part thereof." Pa. Const. art. III, § 3 (emphasis added). Article III, section 11 further provides:

> The general appropriation act shall embrace nothing but appropriations for the executive, legislative and judicial departments of the Commonwealth, for the public debt and for public schools. All other appropriations shall be made by separate bills, each embracing but one subject.

 Contrary to the assertions made by Petitioners, the Pennsylvania Constitution does not distinguish a transportation bill for the purposes of Article III. While Article VIII, section 11 of the Pennsylvania Constitution does pertain to transportation bills, specifically to the collection, use and disbursement of proceeds derived from taxes and fees involving motor vehicles, this section of the Constitution is substantive, not procedural. The Constitution is devoid of any procedural restrictions specifically relating to the enactment process for a transportation bill. Therefore, the enactment process for a transportation bill, unlike a general appropriation bill, is like any other bill in the General Assembly.

 Here, the General Assembly through Act 3 allocated funds from the Motor License Fund to the Pennsylvania Department of Transportation and to the Turnpike Commission. Act 3 comports with the substantive limitations and restrictions prescribed by Article VIII, Section 11 because it allocated funds to state agencies solely for construction, reconstruction, maintenance and repair of public highways and bridges. As there is no special procedure for the passage of a

transportation bill regulated by Article VIII, Section 11, we conclude that Petitioners have failed to state a claim under Article VIII, Section 11 and Article III Sections 1–5 of the Pennsylvania Constitution.

Based upon the foregoing analysis, we conclude that Petitioners' petition for review fails to state a claim upon which relief may be granted. Accordingly, the Respondents' and Intervenors' preliminary objections in the nature of a demurrer are sustained.

## IV. CONCLUSION

Accordingly, the preliminary objections of Respondents and the Intervenors to Petitioners' petition for review are overruled in part and are sustained in part in accordance with the foregoing opinion. Petitioners' petition for review is dismissed with prejudice.

### *ORDER*

AND NOW, this 31st day of March, 1998, it is hereby ordered:

1. The preliminary objections filed by Respondents to the petition for review in the nature of a complaint in equity filed by Petitioners are overruled in part and sustained in part in accordance with the foregoing opinion.

2. The preliminary objections filed by Intervenors Jubelirer and Ryan to the petition for review in the nature of a complaint in equity filed by Petitioners are overruled in part and sustained in part in accordance with the foregoing opinion.

3. The petition for review in the nature of a complaint in equity filed by Petitioners is dismissed with prejudice.

SMITH, J., concurs in the result only.

FRIEDMAN, J., joins in part and dissents in part. She would overrule respondents' demurrer to its Article III, §§ 1 and 3 claims.