J-A05007-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ALEXANDRO ALVES DASILVA AND MEIRIVAM DASILVA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | No. 1707 EDA 2025 |
| ABINGTON MEMORIAL HOSPITAL D/B/A JEFFERSON ABINGTON HOSPITAL, JOHN DOE AND/OR JOHN DOE COMPANY | : | |

Appeal from the Order Entered June 17, 2025
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 241203207

BEFORE: KUNSELMAN, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED JUNE 2, 2026**

In this medical malpractice case, Appellants, Alexandro DaSilva and his wife, Meirivam DaSilva, ("the DaSilvas") appeal from the order sustaining the preliminary objections of Abington Memorial Hospital d/b/a/ Jefferson Abington Hospital, John Doe and /or John Doe Company ("the Hospital") and dismissing the DaSilvas' second amended complaint with prejudice. The DaSilvas argue that the complaint was sufficient and/or that they should be allowed to amend. Upon review, we reverse.

On January 5, 2024, Alexandro went to the emergency room at the Hospital and stayed into the next day. The nursing staff evaluated him. They noted:

> 36-year old male presenting with ***unusual behavior*** and ***not sleeping for 48 hours***. Patient ***making very odd statements***,

> ***running on the treadmill in the middle of the night***, ***extremely stressed out acting odd***. He had not had any auditory visual hallucination, no active SI or HI. On physical exam patient has an odd [effect] but otherwise normal exam. Normal neurologic exam. Patient's ***symptoms consistent with a psychotic break*** however will rule out organic causes. Patient care transitioned to oncoming team ***pending*** final disposition ***crisis evaluation***.
>
> And fever. The headache resolved after 1 day, the fever after 2 days. His cough continues. As the cough continues, his wife notices that he has not been sleeping well but yesterday he did ***not sleep at all*** and was ***talking throughout the entire night***. The patient admits that for the past couple of nights he runs on the treadmill in the middle of the night. He ***was making strange statements like, "I'm dying and I need to say goodbye to the kids."*** He ***repeatedly made statements that he was going to die.*** He had an appointment with the family doctor today and in the car ride there, he was ***having increasingly unusual behavior such as getting undressed completely while in the passenger seat*** . . .

Second Amended Complaint, ¶ 9 (emphasis added). When Alexandro's nurse left him to care for another patient, Alexandro walked out of the Hospital and was hit by a car. He was seriously injured.

On December 30, 2024, the DaSilvas filed a complaint. They alleged that Alexandro was suffering from a psychiatric episode when he came to the Hospital for medical care. They further claimed that the Hospital was negligent, directly and vicariously, in caring for Alexandro and allowing him to leave Hospital while still in that state, and, as a result he was hit by a car and

injured. Additionally, the DaSilvas claimed the Hospital violated the Emergency Medical Treatment and Labor Act ("EMTALA"), 52 U.S.C. 1395dd.[1]

On January 17, 2025, the Hospital filed a notice of removal to federal court. On February 18, 2025, the parties stipulated to the withdrawal of the federal EMTALA claims and transferred the case back to the Philadelphia Court of Common Pleas.

On February 27, 2025, the DaSilvas filed a first amended complaint. Again, the DaSilvas alleged that Alexandro was suffering from a psychiatric episode when he went to the Hospital for medical care. They further alleged that the Hospital medical and nursing staff saw Alexandro in the emergency room. According to Alexandro's medical chart, Alexandro's nurse left him to care for another patient. The DaSilvas claimed that the Hospital and its employees, agents, and apparent agents were negligent in failing to follow various standards of care and allowing him to leave the hospital in such state, which caused his injuries. The DaSilvas averred that Hospital was negligent as to screening, stabilizing, monitoring, and triaging Alexandro but did not reference the EMTALA or claim of discrimination.

---

[1] This federal statute places obligations of screening and stabilization upon hospitals and emergency rooms that receive patients suffering from an "emergency medical condition." **Roberts v. Galen of Virginia, Inc.**, 525 U.S. 249, 250 (1999). "EMTALA requires hospitals to provide medical screening and stabilizing treatment to individuals seeking medical care in a nondiscriminatory manner." **Torretti v. Main Line Hosps., Inc.**, 580 F.3d 168, 173 (3d Cir. 2009).

On March 20, 2025, the Hospital filed preliminary objections again maintaining that: the DaSilvas failed to plead any material factual allegations in support of their negligence claims, their allegations of negligence and agency were vague/insufficiently specific, and they asserted EMTALA claims in violation of the stipulation.

In response, the DaSilvas filed a second amended complaint on April 9, 2025. In this complaint, the DaSilvas added the excerpt referenced above from Alexandro's medical chart, that included his unusual behavior upon his initial evaluation.

On April 24, 2025, the Hospital again filed preliminary objections seeking dismissal of this complaint for failure to set forth material facts, lack of specificity, and inclusion of scandalous and impertinent matter. The Hospital maintained that the second amended complaint was the same as the first, except that it included an incomplete excerpt from Alexandro's medical record, which did not clarify or support the specific theories of liability.

On June 16, 2025, the trial court entered an order sustaining the Hospital's preliminary objections and dismissed the DaSilvas' second amended complaint with prejudice. Specifically, the court concluded that the DaSilvas: 1) failed to plead any material factual allegations in support of their claims of negligence; (2) set forth vague allegations of negligence and unidentified agency; and (3) asserted claims under the EMTALA, in violation of the consent order and stipulation.

The DaSilvas filed this timely appeal.  They and the trial court complied with Appellate Rule 1925.

Initially, we observe that the DaSilvas' appellate brief does not include a statement of questions involved, as required by Pa.R.A.P. 2111(4).  Appellate Rule 2116(a) provides as follows:

> **(a)** General rule. The statement of the questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail. The statement will be deemed to include every subsidiary question fairly comprised therein. ***No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.***

Pa.R.A.P. 2116(a) (emphasis added). "We will not ordinarily consider any issue if it has not been set forth in or suggested by an appellate brief's statement of questions involved, Pa.R.A.P. 2116(a), and any issue not raised in a statement of matters complained of on appeal is deemed waived." ***Krebs v. United Ref. Co.***, 893 A.2d 776, 797 (Pa. Super. 2006).  "This Court possesses discretionary authority to quash, dismiss, or deny allowance of appeal based upon the substantial defects of [an] appellant's brief." ***Commonwealth v. Maris***, 629 A.2d 1014, 1017 (Pa. Super. 1993) (citing Pa.R.A.P. 2101).

Because the DaSilvas failed to include a statement of questions involved in their brief, we could deem their issues waived.  Here, however, we decline to do so, as we can easily ascertain their issues.

On appeal, the DaSilvas generally claim that the trial court erred when it sustained the Hospital's preliminary objections and dismissed their complaint with prejudice.

Rule 1028 provides in relevant part:

(a)    Preliminary objections may be filed by any party to any pleading and are limited to the following grounds:

***

2) failure of a pleading to conform to law or rule of court or inclusion of scandalous or impertinent matter;

(3) insufficient specificity in a pleading[.]

Pa.R.C.P. 1028(a)(2) and (3).

"In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred." *Rambo v. Greene*, 906 A.2d 1232, 1235 (Pa. Super. 2006). If the appellate court affirms the trial court's ruling that will result in the denial of a claim or dismissal of the suit, the case must be free and clear from doubt; this Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion. *Id.*

First, the DaSilvas argue that the trial court erred when it concluded that they failed to plead any material facts to support their negligence claims. They further argue that the court erred in determining that their allegations

of negligence and their identity of the Hospital's agents were insufficiently specific. Therefore, according to the DaSilvas, this Court should reverse the trial court's order. DaSilvas' Brief at 9, 13, 20. We agree the second amended complaint was sufficient.

Our Supreme Court has explained:

Pennsylvania is a fact-pleading jurisdiction; as such, a complaint must provide notice of the nature of the plaintiff's claims and also summarize the facts upon which the claims are based. Rule of Civil Procedure 1019(a) and (b) encapsulate this theory. Rule 1019(a) provides that in pleadings, "the material facts on which a cause of action or defense is based shall be stated in a concise and summary form." Pa.R.C.P. 1019(a) . . . . **The purpose . . . is to require the pleader to disclose material facts sufficient to notify the adverse party of the claims it will have to defend against. [Material facts are ultimate facts, i.e., those facts essential to support the claim. Baker v. Rangos**, 324 A.2d 498, 505-06 (Pa. Super. 1974)].

While our rules require the pleading of all material facts upon which claims are based, there is **no requirement to plead the evidence** upon which the pleader will rely to establish those facts. **Unified Sportsmen of Pa. v. Pa. Game Comm'n**, 950 A.2d 1120, 1134 (Pa. Commw. 2008) (holding that to be sufficiently specific, "the complaint need not cite evidence but only those facts necessary for the defendant to prepare a defense"). We have long recognized that the line between pleading facts and evidence is not always bright, but distilled the specificity requirement into two conditions that must always be met: the pleadings must **adequately explain the nature of the claim** to the opposing party so as to permit him **to prepare a defense** and they must be sufficient to convince the court that the **averments are not merely subterfuge**. To assess whether a claim has been pled with the requisite specificity, the **allegations must be viewed in the context of the pleading as a whole**.

***Commonwealth by Shapiro v. Golden Gate Nat'l Senior Care LLC***, 194 A.3d 1010, 1029-1030 (Pa. 2018) (brackets and some quotation marks and citations omitted).

Again, the trial court opined that the DaSilvas' second amended complaint lacked the requested specificity. We find this was error. ***See Rambo***. Reading the allegations in the context of the entire complaint, we conclude that the DaSilvas complied with our pleading requirements. In their second amended complaint, the DaSilvas set forth material facts as required under Rule 1019. In this medical malpractice action the DaSilvas alleged the following: on January 5, 2024, Alexandro came to Hospital for medical care and help; he was having a psychiatric episode, the details of which are highlighted in his medical chart from the Hospital; the Hospital improperly and negligently cared for Alexandro in various ways, which, notably, included leaving him unattended given his mental and physical state and allowing him to walk out of the Hospital in that condition; and as a result, he was hit by a car, injured, and disfigured. These material facts put the Hospital on notice of the claims it will have to defend against. ***See Shapiro***, ***supra***.

Additionally, the DaSilvas pled these facts with sufficient specificity and were not mere subterfuge. The DaSilvas allege numerous negligent acts and/or omissions by the Hospital in caring for Alexandro, who was experiencing mental health issues. The DaSilvas further specified the circumstances surrounding Hospital's negligent acts and/or omission by adding the excerpt from Alexandro's medical chart. This excerpt detailed

Alexandro's mental and physical condition when he came to the Hospital. It specifically described Alexandro's symptoms, complaints, and behaviors and provided context for the DaSilvas allegations of negligence.

This information also alleged that the medical and nursing staff was aware that Alexandro was having a mental health crisis and were awaiting an evaluation. Nonetheless, they left Alexandro unattended, and he was able to walk out of the hospital in that state, and, as a result, a car hit and injured him.

Furthermore, the DaSilvas' allegations of agency were sufficiently specific. Here, the DaSilvas generally alleged that the Hospital acted negligently "through its employees/agents" and that "[t]he nurses and medical providers, including the Emergency Room nurse and Doctors who cared for [Alexandro] were the agents, apparent agents, ostensible agents, servants, workmen, or employees, or were otherwise associated with, [Hospital], . . ."

This Court has concluded that "it is not necessary for a plaintiff to establish a right to recover on a claim for vicarious liability based upon the negligence of a specific named employee." *Est. of Denmark ex rel. Hurst v. Williams*, 117 A.3d 300, 306 (Pa. Super. 2015). "'Simply because employees are unnamed within a complaint or referred to as a unit, i.e., the staff, does not preclude one's claim against their employer under vicarious liability if the employees acted negligently during the course and with the

scope of their employment.'" *Id.* (quoting *Sokolsky v. Eidelman*, 93 A.3d 858 (Pa. Super. 2014) (emphasis removed).

Understanding that agents do not have to be named, when reading this language in the context of the whole complaint, the DaSilvas claims are apparent. First, the DaSilvas alleged that Alexandro sought care at Hospital's emergency room. In fact, they reference emergency room providers. Thus, these allegations clearly call into question the Hospital's actions in relation to and through its emergency room staff.

Additionally, the DaSilvas averred that Alexandro was at the Hospital's emergency room on January 5th and 6th, which provides a specific time frame and limits those who could allegedly be responsible for his care. Because he was experiencing mental health issues, this further narrows the class of employees who potentially were involved in his care.

Moreover, this Court has concluded that where a plaintiff does not identify the nurses or doctors, or other agents for that matter, allegedly responsible, the names of those who performed services for the plaintiff are known to the defendant or can be ascertained during discovery. *Denmark*, 117 A.3d at 307.

Thus, we conclude that the trial court erred when it sustained Hospital's preliminary objections for failure to plead material facts and insufficient specificity.

The DaSilvas also argue that the trial court erred when it determined that their second amended complaint included scandalous and impertinent

material. They maintain that, although they agreed to withdraw the EMTALA-based claims, the state law negligence claims based on the same operative facts remain viable and properly plead. DaSilvas' Brief at 20. We agree.

Pennsylvania Rule of Civil Procedure 1028(a)(2) provides for preliminary objections to be filed when pleadings include a scandalous or impertinent matter. To be scandalous or impertinent, "'the allegation must be immaterial and inappropriate to the proof of the cause of action.'" *Breslin v. Mountain View Nursing Home, Inc.*, 171 A.3d 818, 829 (Pa. Super. 2017) (quoting *Common Cause/Pennsylvania v. Commonwealth*, 710 A.2d 108, 115 (Pa. Commw. 1998)). The right to strike impertinent matter, however, "'should be sparingly exercised and only when a party can affirmatively show prejudice.'" *Id.* (quoting *Commonwealth Dep't of Envtl. Res. v. Hartford Accident and Indem. Co.*, 396 A.2d 885, 888 (Pa. Commw. 1979)).

Here, the trial court struck as "scandalous or impertinent" the allegations of the second amended complaint which it found related to the DaSilvas' EMTALA claims because they agreed to withdraw those claims. However, as the DaSilvas argue, the allegations pertaining to triaging, screening, stabilizing, and monitoring, *etc.*, which may serve as a basis for an EMTALA discrimination claim, may also serve as the basis for a general negligence claim under state law.

The EMTALA "is not a malpractice statute" and "cannot be used to challenge the quality of medical care." *Nartey v. Franciscan Health Hosp.*, 2 F.4th 1020, 1025 (7th Cir. 2021). "'EMTALA was not intended to establish

- 11 -

guidelines for patient care, [to] replace available state remedies, or to provide a federal remedy for medical negligence.'" ***Munoz v. Children's Hosp. of Philadelphia***, 265 A.3d 801, 807 n.6 (Pa. Super. 2021) (quoting ***Harry v. Marchant***, 291 F.3d 767, 773 (11th Cir. 2002) (citations omitted).

Thus, the allegations pertaining to how Hospital triaged, screened, stabilized, and monitored Alexandro relate to the DaSilvas' malpractice claim and therefore were not encompassed by the parties' stipulation to withdraw the EMTALA claims. The DaSilvas only agreed to withdraw their EMTALA discrimination claim. We therefore conclude these allegations were not "immaterial and inappropriate" and the trial court erred in sustaining Hospital's preliminary objection on this basis.

Accordingly, we reverse the trial court's order sustaining Hospital's preliminary objections.[2]

Order reversed. Case remanded for defendant to file an answer to the second amended complaint. Jurisdiction relinquished.

---

[2] Given this disposition, we need not address the DaSilvas remaining issue as to whether it should be permitted to amend. Even if we had found the allegations insufficient, we note that our Supreme Court has granted leave to amend even when the appellant did not request this remedy with the trial court so long as the amendment would not be futile. ***See Otto v. American Mutual Ins. Co.***, 393 A.2d 450, 451 (Pa. 1978). Here, again, we conclude no amendment is necessary.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>6/2/2026</u>